[Civ. No. 52257. First Dist., Div. Four. July 27, 1983.]

ALBERT GENOVIA et al., Plaintiffs and Appellants, v.
PATRICK HENRY CASSIDY, Defendant and Respondent.

**COUNSEL**

D. G. Jason Davis and Wohlstadler & Davis for Plaintiffs and Appellants.

Michael J. Brady, Jonathan Lee Willis and Ropers, Majeski, Kohn, Bentley, Wagner & Kane for Defendant and Respondent.

**OPINION**

**COOK, J.***—In this appeal we consider the propriety of the judgment of dismissal of a personal injury action, granted on motion of defendant/respondent, following an arbitration proceeding in which the plaintiffs/appellants had requested and obtained from the arbitrator the entry of an award for respondent, with intent to avoid submission of their claims for determination by the arbitrator.

## I. The Background

Albert Genovia, acting for himself and as guardian ad litem for Justin Ahrenkiel (appellants), brought this action for damages for alleged personal injuries sustained in an automobile collision in Daly City, against Patrick Henry Cassidy (respondent).

At the prearbitration settlement and setting conference, the court determined that the case was one in which damages would not exceed $15,000 for each plaintiff and ordered that it be submitted to arbitration pursuant to Code of Civil Procedure section 1141.11, subdivision (a).[1] An arbitrator was appointed and the date for the hearing was set for September 10, 1980.

---

*Assigned by the Chairperson of the Judicial Council.

[1] Code of Civil Procedure section 1141.11, subdivision (a), provides: "In each superior court with 10 or more judges, all at-issue civil actions pending on or filed after the operative date of this chapter shall be submitted to arbitration, by the presiding judge or the judge designated, under this chapter if the amount in controversy in the opinion of the court will not exceed fifteen thousand dollars ($15,000) for each plaintiff, which decision shall not be appealable." (Eff. date, July 1, 1979.)

We note that San Mateo County had 14 superior court judges in 1980.

· On that date, the arbitrator convened the arbitration session and counsel for plaintiffs and defendant were present. Neither of the two plaintiffs nor defendant appeared. Counsel for plaintiffs had previously filed notice of their intention to produce and offer in evidence the bills and records of medical and hospital care and the police report of the accident of July 18, 1978.

After the introduction of some of the documentary evidence, the following occurred:

(1) Plaintiffs' counsel asked the arbitrator to enter a verdict [*sic*] for the *defendant* and award costs to him *on the basis of plaintiffs' failure to appear at the hearing.*

(2) The arbitrator refused to grant this request and ruled that the matter would proceed on the documentary evidence and the depositions.

(3) Plaintiffs' counsel then repeated his request that the arbitrator enter the verdict [*sic*] for the defendant. He stated that he did not want any money to be awarded to the plaintiff as that would have the force and effect of a section 998[2] [*sic*] offer and would not allow plaintiffs to recover their costs in the subsequent jury trial, with which he wished to proceed, unless the verdict at such trial exceeded the amount of the arbitration award.[3]

(4) The arbitrator then complied with this second request and entered an award for the defendant.

(5) On September 18, 1980, a rejection of this award and a request for a trial de novo by a jury was filed on behalf of plaintiffs.

(6) Defendant then filed his notice of motion to dismiss plaintiffs' action on the basis of retraxit and the asserted disobedience of the court order for arbitration.

The hearing on defendant's motion followed on November 7, 1980. By way of explanation for his request for a defense "verdict" at the arbitration

---

[2]Unless otherwise indicated all statutory references are to the Code of Civil Procedure.

[3]Although plaintiffs' counsel referred to section 998 in his request, that section relates to a failure to obtain a larger verdict after rejection of an offer tendered by an opposing party prior to a court trial. Section 1141.21 provides for similar results in arbitration matters. In pertinent part it reads: "If the judgment upon the *trial de novo is not more* favorable in either the amount of damages or the type of relief granted for the party electing the trial de novo than the arbitration award, the court shall order that party to pay the *following* non-refundable costs and fees . . . ." (There follows a listing of the types of costs covered by this section, which are not in all cases identical with the provisions of § 998.)·

hearing, plaintiffs' counsel stated that his client, Genovia, didn't trust the arbitration procedure, and after "he didn't show up and the arbitrator was proceeding to reorder an award just based on the documents . . . the way it looked to me . . . it was going to end up with an award going to act as a 998. I know that's not very much of a sanction, I guess, but nevertheless . . . I thought I was doing the best thing for him—better for him, in view of the fact that, you know, he wanted a jury trial. I figured the best thing to do for him would be to get an award that wouldn't act as a 998 and reject it and go ahead from there."

In his declaration in opposition to the motion to dismiss, plaintiffs' counsel stated that it was not his intention to "abandon" the case, "but knowing that *even had Mr. Genovia been present to testify, that he would have insisted on his right to trial by jury,* I was attempting *to make the best of a situation where my client inadvertently failed to appear at the hearing.* Neither the arbitrator nor the other side indicated that they would consent to a continuance of the hearing, nor did they suggest such a continuance, and *perhaps in hindsight a continuance should have been asked for.*" (Italics added.) The record does not indicate any such request by him.

No explanation of Genovia's failure to appear at the arbitration was made by him. His counsel's explanation at the hearing and in his declaration was that his client's failure was "due to his having no transportation for mechanical reasons" and "Mr. Genovia apparently had some kind of problem with his car." No declaration of the reasons was made by the client.

Counsel for defendant at the hearing on the motion had also attended the arbitration hearing. At the motion hearing she stated, "I was present at the pre-arbitration conference when this was assigned to arbitration by Judge Haverty. And counsel for plaintiff very specifically said *he did not want arbitration and that he was going to stipulate to a defense verdict. . . .*" (Italics added.)

Plaintiffs' counsel replied, "We did have a conversation at the arbitration setting conference when we actually did discuss this, *because I had previously talked to Mr. Genovia about it. . . .*" (Italics added.)

In making his ruling to grant the motion the hearing judge stated, "the Legislature has very clearly said that this [arbitration] is the process to be used for these kinds of cases. The Legislature has also said that that referral is a non-appealable referral; that we are not to misuse or abuse that process. The Legislature clearly said you may not avoid that as this seems to be an attempt on the part of your client. I am not blaming you and he will have to suffer the consequences."

## II. The Basis for the Court's Ruling

The hearing judge did not base his ruling on the theory of retraxit. His remarks quite clearly indicate that he considered the conduct on the part of plaintiff, with assistance from his counsel, as an attempt to avoid the mandate of section 1141.11, and the order of the court for referral to arbitration pursuant thereto. In a postruling statement, after plaintiffs' counsel had re iterated that there was no abandonment of the cause of action, the judge said, "Counsel, on the record you already stated your client didn't wish to proceed on the arbitration and didn't show up."

## III. The Contentions of the Parties

Appellants assert (1) that their actions did not amount to a retraxit of their cause of action and (2) that it was an abuse of discretion to dismiss the case on the ground of disobedience of the court order, where other sanctions were available before imposing "the ultimate sanction."[4]

Respondent maintains (1) that the conduct in question was "in direct contravention of the legislative purpose of arbitration and constituted an abuse of that process" and was also in direct violation of the order directing arbitration, which did afford to appellants an opportunity for a full hearing on the merits; and (2) that by expressly requesting the arbitrator to enter a "verdict" in favor of defendant, appellants had effectively abandoned their case.

## IV. Discussion

Since the trial judge did not address the issue of retraxit and based his decision solely on the attempt of appellants to circumvent the arbitration proceedings, we will consider that issue only, inasmuch as it constitutes the reasoning of the court which we must scrutinize in determining whether the granting of the motion to dismiss was an abuse of discretion.

The purpose of the California Legislature in providing for judicial arbitration is very clearly stated in section 1141.10: "(a) The Legislature finds and declares that litigation involving small civil claims has become so costly and complex as to make more difficult the efficient resolution of such civil claims that courts are unable to efficiently resolve the increased number of cases filed each year, and that the resulting delays and expenses deny parties their right to a timely resolution of minor civil disputes. The Legislature further finds and declares that arbitration has proven to be an efficient and

---

[4]It does not appear that this alternative was ever presented to the court.

equitable method for resolving such claims, *and that courts should encourage or require* the use of arbitration for such actions whenever possible.

"(b) It is the intent of the Legislature that:

"(1) Arbitration hearings held pursuant to this chapter shall provide parties with a simplified and economical procedure for obtaining prompt and equitable resolution of their disputes." (Italics added.)

As noted (see fn. 1, *ante*), the provisions of section 1141.11, subdivision (a), made it mandatory for the judge conducting the pretrial conference to order the submission of this case to arbitration. There is no indication in the briefs submitted by counsel that this was not a proper case for such an order to have been made.

The record before us indicates clearly that appellant Genovia had entertained ideas at variance with this policy and that prior to the start of the arbitration proceeding he had devised a plan for circumventing it. His failure to attend, or to explain his absence, was clearly and properly considered by the court to have been a part of this plan.

Instead of proceeding with the arbitration and awaiting the award of the arbitrator, based on the evidence submitted, and then pursuing his available remedy under section 1141.20,[5] plaintiffs' counsel, in furtherance of his client's plan, elected to request the arbitrator to enter an award of a judgment adverse to plaintiff in the stated belief that he felt that he was best serving Mr. Genovia's wishes by so doing. That he did this with the stated purpose of preserving a right to which he was not then entitled under section 1141.21, and to the disadvantage of respondent, raises a clear question of his demeanor and good faith in complying with the governing statutory law and the order of the trial court.

One obvious disadvantage to respondent is that he was denied the benefits of his right to a simple, more economical procedure for the prompt resolution of the issues. The arbitration procedures, established by the Legislature, give this right to all parties.

Respondent has also pointed out that by this device of requesting an award for the defendant, "a later jury award of even one dollar would allow ap-

---

[5]Section 1141.20 provides: "An arbitration award shall be final if a request for a de novo trial is not filed within 20 days after the date the arbitrator files the award with the court. Any party may elect to have a de novo trial, by court or jury, both as to law and facts. Such trial shall be calendared, insofar as possible, so that the trial shall be given the same place on the active list as it had prior to arbitration, or shall receive civil priority on the next setting calendar."

pellants to recover all of the costs at the trial de novo," provided by section 1141.21.

## V. Review of the Exercise of Discretion

We are not confronted with the type of problem, frequently found in cases raising the issue of abuse of discretion, where a question of delay or neglect by a party or his counsel must be considered.

To the contrary, we find here a substantially uncontroverted instance of a premeditated, intentional and purposeful course of action taken by Genovia and his counsel to seek an avenue of escape from a clearly mandated arbitration procedure.

In their brief, appellants contend that their conduct, while not exemplary, was not as bad as that which formed the basis for appellate court approval of the dismissal of the action in *Morales* v. *Camello* (1970) 12 Cal.App.3d 370 [90 Cal.Rptr. 718], a case relied on by respondent. They also contend that "in fact the court order had been substantially complied with."

In *Morales,* the trial court had ordered plaintiffs to file a second amended complaint in complete form following the filing of a second amended complaint which incorporated portions of an earlier complaint by reference. The plaintiffs did not amend. Instead they moved under section 473 for the court to vacate its order. The motion was denied and the trial court thereupon dismissed the action. The appellate court stated: "In refusing to comply with the trial court's *request* for a complete written pleading in one document, a *request* well within the bounds of the trial court's discretion, *plaintiffs fell below minimum standards of compliance with court procedures required from litigants and their counsel and charted a course which can best be described as trifling with the court. In persisting in that course plaintiffs brought about their own denial of a hearing on the merits of their cause.* (*Id.,* at pp. 372-373; italics added.)

We cannot accept appellants' claim that their conduct was less culpable than that described in *Morales.* This case and *Morales* both involve conduct which borders upon contempt of lawful orders. The conclusion is inescapable that compliance with the procedures prescribed by the Legislature is incumbent on all parties and their counsel. In the absence of voluntary compliance, it is the clear duty of the courts to "encourage and require the use of arbitration" by appropriate action.

The stated purpose of the statutes establishing mandatory arbitration clearly is to give *all* litigants a right to a "simplified and economical procedure

for obtaining prompt and equitable resolution of their disputes." (§ 1141.10, *supra.*)

Applying the sanctions heretofore employed by the courts when litigants or counsel fail to proceed with promptness and propriety is necessary for the effective use of arbitration if the expressed intent of the Legislature is to be brought to fruition. We refer to three recent cases where such sanctions have heretofore been imposed: *Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892 [187 Cal.Rptr. 592, 654 P.2d 775]; *Stone* v. *Bach* (1978) 80 Cal.App.3d 442, 444 [145 Cal.Rptr. 599]; *Martin* v. *Cook* (1977) 68 Cal.App.3d 799, 806-810 [137 Cal.Rptr. 434].

In *Martin,* the trial court was reversed with directions to vacate its order granting relief and to enter an order dismissing plaintiffs' complaint on the ground of a failure to prosecute the action with reasonable promptness and diligence which was held to be inexcusable.[6] In *Carroll,* the guiding principle, in cases where the issue of judicial discretion is raised, is reiterated: "That discretion, however, ' "is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' (*Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 526 [190 P.2d 593]; *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424.)" (32 Cal.3d at p. 898.)

We have considered the case of *Herbert* v. *Harn* (1982) 133 Cal.App.3d 465 [184 Cal.Rptr. 83], cited by appellant at oral argument. We do not deem it to be germane to our decision in the case at bench. That decision was based in part on a local rule adopted in Orange County which requires a party who fails to appear at the arbitration to file a noticed motion in order to obtain the de novo trial. It does not, however, deal with a deliberate plan to circumvent the mandated provisions of the 1978 judicial arbitration statutes. To the extent that the opinion in *Harn* might be construed to lessen the obligation of courts to *"encourage or require the use of arbitration,"* as declared by the Legislature in section 1141.10, we decline to follow it.

As stated in *Herbert Hawkins Realtors, Inc.* v. *Milheiser* (1983) 140 Cal.App.3d 334 [189 Cal.Rptr. 450], cited by respondent at oral argument, "No party has the right to avoid the judicial arbitration award at their [*sic*] whim . . . ." (*Id.,* at p. 340.) In that case plaintiffs requested a trial de novo following a judicial arbitration award favoring defendants. They then

---

[6]In *Martin,* the appeal was from the judgment entered *after* a jury verdict for $100,000. Hearing by the Supreme Court was denied.

dismissed their action without prejudice pursuant to section 581, subdivision 1. Defendants next moved for an order of dismissal with prejudice and an award of costs. The trial court denied this motion. The appellate court reversed, holding that giving approval to the plaintiffs to dismiss without prejudice, after having requested a trial de novo, *"defeats the express legislative purpose of 'expediting and removing complexities from the judicial process relating to small civil claims . . . .' (Alvarado v. City of Port Hueneme* (1982) 133 Cal.App.3d 695, 705 [184 Cal.Rptr. 154].)" The *Herbert Hawkins Realtors* court further noted that such a result *"produces absurd consequences and promotes mischievous lawyering." (Id.,* at p. 339; italics added.)[7]

In a recent opinion our Supreme Court has reiterated the policy of this state relative to the encouragement and protection of the integrity of arbitration proceedings. In *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778 [191 Cal.Rptr. 8, 661 P.2d 1088], the plaintiff owners of an apartment building had filed suit against the construction contractors relative to contract disputes. Following the sustaining of a demurrer to the initial complaint, plaintiffs filed an amended complaint. Their stated purpose in filing these complaints was to " 'obtain from the defendants an answer and affirmative defenses so that the Christensens could have some feel for what Defendants' position would be at arbitration . . . .' " (*Id.,* at p. 781.)

Before ruling on the demurrer to the amended complaint, the trial court allowed plaintiffs to voluntarily dismiss that complaint without prejudice, but denied their petition to compel arbitration provided for in the construction contract.

In affirming this action the Supreme Court held that the owners had waived their right to contractual arbitration by filing suit in knowing disregard of the contract arbitration provision for the admitted purpose only of discovering the contractor's legal theory of defense, and with the intention of then seeking arbitration.

The court in *Christensen* further held that this conduct of the plaintiffs constituted bad faith. In the opinion, written for the court by Justice Grodin, it is stated that "While this court has in other contexts been reluctant to find waiver, partly in recognition of this state's policy to encourage arbitration as an alternative to litigation, *we conclude that the state's policy would be undermined, rather than served, by permitting this sort of deliberate endrun around the arbitral process." (Id.,* at p. 781; italics added.)

---

[7]We note that both *Herbert* and *Herbert Hawkins Realtors* were decided by the same division of the Fourth District of this court. It seems reasonable to assume that no conflict was intended between the respective opinions.

The opinion in *Keating* v. *Superior Court* (1982) 31 Cal.3d 584 [183 Cal.Rptr. 360, 645 P.2d 1192] [determination of jurisdiction postponed pending hearing on the merits (1983) 459 U.S. 1101 (74 L.Ed.2d 948, 103 S.Ct. 721)], also written by Justice Grodin, states that while there is no "single test" in establishing waiver, "the relevant factors include whether the party seeking arbitration (1) *has 'previously taken steps inconsistent with an intent to invoke arbitration,'* . . . (3) *or has acted in 'bad faith' or with 'wilful misconduct.' "* (*Id.*, at p. 605; italics added; see also *Davis* v. *Blue Cross of Northern California* (1979) 25 Cal.3d 418, 425-426 [158 Cal.Rptr. 828, 600 P.2d 1060].)

While both *Christensen* and *Keating* involve a waiver of the *right to arbitration,* it would appear that the similar objectional conduct on the part of plaintiffs in the case at bench should result in the same judicial rebuke to their efforts to "end-run around the arbitral process," in order to obtain an advantage at the trial de novo.

Appellants rely, in part, on that policy of the law which favors trials on the merits. The court in *Carroll* v. *Abbott Laboratories, Inc., supra,* 32 Cal.3d 892, 900, also addresses this issue: " 'The policy that the law favors trying all cases and controversies upon their merits should not be prostituted to permit the slovenly practice of law or to relieve courts of the duty of scrutinizing carefully the affidavits or declarations filed in support of motions for relief to ascertain whether they set forth, with adequate particularity, grounds for relief. [Fn. omitted.] *When inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law.' "* (Italics added.)

We conclude from the facts noted in this case and the cited applicable law, that the judgment of dismissal was mandated and that there was no abuse of discretion.[8]

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

---

[8]In *Bailey* v. *Taaffe, supra,* 29 Cal. 422, 424, the court further stated: "In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates."