[L.A. No. 31991. Dec. 1, 1986.]

EDWARD J. LYONS, Plaintiff and Appellant, v.
ERWIN WICKHORST et al., Defendants and Respondents.

912

**COUNSEL**

Edward J. Lyons, in pro. per., and Edward Tabash for Plaintiff and Appellant.

Patricia F. Clothier for Defendants and Respondents.

**OPINION**

**BIRD, C. J.**—Does a trial court exceed its authority when it dismisses a plaintiff's action with prejudice because no evidence was presented at a court-ordered arbitration?

I.

In June of 1980, appellant Edward Lyons filed a lawsuit against respondent Erwin Wickhorst seeking actual, compensatory, and punitive damages for unlawful arrest and false imprisonment.[1] Since appellant did not seek dam-

---

[1] In the underlying action, appellant represented a hotel that leased space to a restaurant owned by respondent Wickhorst. The hotel management and respondent were engaged in several disputes concerning compliance with the terms of the lease agreement. Appellant, pursuant to a request by the hotel's owner, made an examination of the kitchen of the restaurant to determine whether the building was in violation of health and safety regulations. During the inspection, an employee of the restaurant phoned the police. Upon leaving the restaurant, appellant was placed under citizen's arrest by respondent Wickhorst. No criminal complaint was ever filed against him.

ages in excess of $25,000, the trial court ordered mandatory arbitration pursuant to Code of Civil Procedure section 1141.11.[2]

The first arbitration hearing was set for November of 1982. Immediately prior to the arbitration, appellant informed the arbitrator and counsel for respondent that he did not intend to present any evidence in support of his case. In response, respondent made no attempt to refute appellant's claims. Thus, no evidence was introduced at the first hearing.

The superior court appointed a new arbitrator and set a new hearing for June of 1983. During this second attempt at arbitration, appellant once again declined to present evidence. Respondents did not attend the hearing after informing the arbitrator that attendance would be futile in light of appellant's refusal to proceed.

Although no evidence was presented during either of the two hearings, the arbitrator entered an award in favor of respondents. On the same day that the award was entered, appellant requested a trial de novo pursuant to section 1141.20.[3] Upon motion by respondent, the court dismissed the action stating that appellant's refusal to offer any evidence at the court-ordered arbitration hearings "border[ed] on contempt," and was a "continuing and willful rejection of the whole arbitration program."

Appellant challenges the authority of the trial court to dismiss his action for failure to participate in the mandatory arbitration procedures.

## II.

In dismissing appellant's action, the trial court relied in part on section 581 and the "Rules of Court Ordered Arbitration." Section 581 authorizes dismissal by the court in any of the following situations: (1) neither party appears at the trial following 30 days notice of time and place; (2) a demurrer is sustained without leave to amend; (3) the plaintiff abandons the case prior to final submission, or (4) either party fails to appear and the other party requests dismissal. None of these scenarios occurred in the present case.

---

[2]Unless otherwise specified, all statutory references are to the Code of Civil Procedure. Section 1141.11 states in pertinent part: "(a) In each superior court with 10 or more judges, all at-issue civil actions pending on or filed after the operative date of this chapter shall be submitted to arbitration, by the presiding judge or the judge designated . . . . [¶] (e) In the count[y] of Los Angeles . . . actions in which the amount in controversy does not exceed twenty-five thousand dollars ($25,000) shall be submitted to arbitration."

[3]Section 1141.20 provides in relevant part that: "Any party may elect to have a de novo trial, by court or by jury, both as to law and facts."

■ Similarly, neither the judicial arbitration statutes (§§ 1141.10-1141.32) nor the rules of judicial arbitration (Cal. Rules of Court, rules 1600-1617) permit the courts to dismiss an action because of a plaintiff's failure to present evidence at a judicially mandated arbitration proceeding.

■ A separate provision—section 128.5—authorizes a trial court to order a party to a judicial arbitration proceeding to pay "any reasonable expenses, including attorney's fees" which the opposing party incurs "as a result of *bad-faith actions*" or frivolous or delaying tactics in such a proceeding. Thus, the trial court's dismissal of appellant's action was not expressly authorized by statute.

In the absence of express statutory authority, a trial court may, under certain circumstances, invoke its limited, inherent discretionary power to dismiss claims with prejudice. (See 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 212, pp. 517-518.) However, this power has in the past been confined to two types of situations: (1) the plaintiff has failed to prosecute diligently (*Romero* v. *Snyder* (1914) 167 Cal. 216 [138 P. 1002]); or (2) the complaint has been shown to be "fictitious or sham" such that the plaintiff has no valid cause of action (*Cunha* v. *Anglo California Nat. Bank* (1939) 34 Cal.App.2d 383, 388 [93 P.2d 572]).[4]

■ The discretion to dismiss an action for lack of prosecution has recently been recodified in section 583.410. Section 583.410 permits the court to dismiss an action for lack of prosecution provided that one of several enumerated conditions has occurred. Generally, the court may not dismiss unless "(1) [s]ervice is not made within two years after the action is commenced . . . (2) [t]he action is not brought to trial within . . . [t]hree years after [it] is commenced . . . [or] (3) [a] new trial is granted and the action is not again brought to trial . . . within . . . two years . . . ." (§ 583.420.)

As this court noted in *Weeks* v. *Roberts* (1968) 68 Cal.2d 802, 805 [69 Cal.Rptr. 305, 442 P.2d 361], this two-year statutory period was intended to "limit[] the court's independent power to dismiss an action for want of prosecution at any time." Thus, a minimum delay of two years is required before a trial court can exercise its discretionary dismissal powers. (See *Hartman* v. *Gordon H. Ball, Inc.* (1969) 269 Cal.App.2d 779 [75 Cal.Rptr. 618] [dismissal was improper under both the five-year and two-year periods and was therefore not justified as an exercise of the trial court's inherent power to dismiss]; see also *Raggio* v. *Southern Pacific Co.* (1919) 181 Cal.

---

[4]Several additional grounds for dismissal have been recognized over the years. These include: (1) lack of jurisdiction; (2) inconvenient forum (see § 410.30 [generally without prejudice]); (3) nonjusticiable controversy; and (4) plaintiff's failure to give security for costs (See 6 Witkin, *op. cit. supra*, § 212, pp. 517-518). None of these miscellaneous grounds is applicable here.

472, 475 [185 P. 171]; *Tew* v. *Tew* (1958) 160 Cal.App.2d 141, 144 [324 P.2d 625].) No such delay occurred in the present case. Similarly, no claims were made by respondents that appellant's complaint did not allege a sufficient basis upon which to plead a valid cause of action. Nor did the trial court state on the record that its order of dismissal was entered for this reason.

In those situations in which a dismissal pursuant to the court's discretionary power has been upheld, affirmance has not been without reservation. (See, e.g., *Karras* v. *Western Title Ins. Co.* (1969) 270 Cal.App.2d 753, 758 [76 Cal.Rptr. 141].) The courts have long recognized a policy favoring a trial on the merits. (*Ibid.*) As the courts of this state have stressed, "[a]lthough a defendant is entitled to the weight of the policy underlying the dismissal statute, which seeks to prevent unreasonable delays in litigation, the policy is less powerful than that which seeks to dispose of litigation on the merits rather than on procedural grounds." (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 389-390 [38 Cal.Rptr. 693].) In sum, although the discretionary power to dismiss with prejudice has been upheld in this state, its use has been tightly circumscribed.

Similarly, federal appellate courts have also construed this power narrowly. Rule 41(b) of the Federal Rules of Civil Procedure permits a trial court to dismiss an action involuntarily. The rule authorizes dismissal upon a defendant's motion when the plaintiff has failed to comply with the Federal Rules of Civil Procedure or any order of the court.[5] In addition, the court, pursuant to its inherent power, may dismiss an action sua sponte for the same reasons. (*Jones* v. *Caddo Parish School Bd.* (5th Cir. 1983) 704 F.2d 206, 215, fn. 17, rehg. en banc granted on other grounds (1984) 735 F.2d 923.)

If read literally, rule 41(b) would authorize dismissals with prejudice for the most trivial noncompliance with procedural rules or court orders. (9 Wright & Miller, Federal Practice and Procedure (1st ed. 1982) § 2369, p. 191.) However, an examination of federal decisional authority demonstrates that the utilization of rule 41(b) has been carefully circumscribed.

An order dismissing an action on one of the grounds delineated in rule 41(b) constitutes an adjudication on the merits unless the trial court specifies otherwise. (Fed. Rules Civ. Proc., rule 41(b), 28 U.S.C.) Thus, further

---

[5]Rule 41(b) states in pertinent part: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits."

adjudication of the same cause of action is barred even though the substantive issues of the case have never been addressed. (*Saylor* v. *Lindsley* (2d Cir. 1968) 391 F.2d 965, 968.)

The effect of a dismissal under rule 41(b) is to forever deny a litigant access to the courts for the impartial resolution of potentially meritorious claims. (See *Moore* v. *St. Louis Music Supply Co., Inc.* (8th Cir. 1976) 539 F.2d 1191, 1193.) For this reason, the federal courts, when called upon to determine the propriety of an involuntary dismissal, have repeatedly stressed that such a dismissal is a "drastic" measure which should be "used only in extreme situations" where "lesser sanctions would not serve the best interests of justice." (*Pond* v. *Braniff Airways, Incorporated* (5th Cir. 1972) 453 F.2d 347, 349; see also *Industrial Bldg. Materials, Inc.* v. *Interchemical Corp.* (9th Cir. 1970) 437 F.2d 1336, 1339.)[6]

While rule 41(b) authorizes dismissals for a plaintiff's failure to comply with "*any* order of court," the scope of rule 41(b) is not as broad as its language would indicate. ■ As demonstrated by the federal cases construing rule 41(b), there are two important inquiries to be made by trial courts when determining whether a plaintiff's actions warrant a dismissal with prejudice. First, the court must discern whether the plaintiff's pattern of conduct was so "severe [and] deliberate" as to constitute extreme circumstances. (*Wrenn* v. *American Cast Iron Pipe Co.* (5th Cir. 1978) 575 F.2d 544, 547.) Second, the court must look to see whether alternatives less severe than dismissal are available. The "'sound exercise of discretion requires the judge to consider and use lesser sanctions'" unless the court's authority cannot possibly be otherwise vindicated. (*Schenck* v. *Bear, Stearns & Co., Inc., supra,* 538 F.2d at p. 60.)

The constraints placed on the discretion of the trial court in this area clearly attest to the fact that rule 41(b) motions for involuntary dismissal are not looked upon favorably by the federal appellate courts.

Likewise, this court must examine the circumstances under which appellant's motion for a trial de novo was dismissed. The dismissal of ap-

---

[6]A host of cases evidence this reluctance to bar a party from trial on the merits of his or her claim. See, e.g., *Schenck* v. *Bear, Stearns & Co., Inc.* (2d Cir. 1978) 583 F.2d 58, 60 [dismissal constituted an abuse of discretion despite plaintiff's lack of diligent prosecution because new counsel expressed willingness to go forward at the pretrial conference and lesser sanctions would have been sufficient to vindicate court's authority]; *J.F. Edwards Const. Co.* v. *Anderson Safeway, etc.* (7th Cir. 1976) 542 F.2d 1318, 1324 [plaintiff's repeated refusals to agree to a stipulation of facts did not justify dismissal]; *Pond* v. *Braniff Airways, Incorporated, supra,* 453 F.2d at p. 349 [dismissal without prejudice constituted an abuse of discretion even though plaintiff's counsel failed to submit a required pretrial order, jury instructions, and proposed findings of fact and conclusions of law]; and *Council of Federated Organizations* v. *Mize* (5th Cir. 1964) 339 F.2d 898, 900 [dismissal inappropriate although plaintiffs did not comply with an order to appear in court personally].)

pellant's complaint was both without notice and without an opportunity to be heard. At the time of appellant's motion, neither the judicial arbitration statutes, nor the rules of judicial arbitration provided standards to guide the exercise of the court's discretion in granting or denying the motion.[7]

*Hebert* v. *Harn* (1982) 133 Cal.App.3d 465 [184 Cal.Rptr. 83] was the first appellate opinion to address the question of the appropriate sanction for a party's nonparticipation in the judicial arbitration process. In *Hebert,* the defendant failed to participate in a mandated arbitration proceeding, and the arbitrator issued an award in favor of the plaintiff. The trial court denied the defendant's timely request for a trial de novo, relying on a local rule of court which required a party who had failed to participate in an arbitration proceeding to demonstrate good cause for its nonparticipation as a prerequisite for obtaining a trial de novo. On appeal, the *Hebert* court concluded that the governing statutes did not authorize denial of a de novo trial under these circumstances and invalidated the local rule.

The court in *Hebert* noted that unlike the legislation establishing prerequisites to appealing a small claims court judgment (see § 117.8, subds. (c) & (d)), the judicial arbitration provisions did not authorize the dismissal of timely motions for a trial de novo even where the moving party had failed to participate in the proceeding. (*Hebert* v. *Harn, supra,* 133 Cal.App.3d at pp. 469-470.) The omission of similar requirements in the arbitration statute was held to demonstrate a legislative intent that access to the court for a new trial be procedurally unfettered.[8] (*Id.,* at p. 470.) In addition, the court suggested that the local rule of court might have been intended to improve the administration of the judicial arbitration scheme, and, therefore, expressly invited the Legislature to consider amending the statute. (*Id.,* at p. 470.)

■ Within two years, the Legislature responded by amending section 128.5 to make clear that the sanctions authorized by that statute for frivolous or delaying tactics were applicable to judicial arbitration proceedings. (Stats. 1984, ch. 355, § 1, introduced as Assem. Bill No. 2752 (1983-1984 Reg. Sess.).) The State Bar and the Judicial Council were joint sponsors of the bill providing for the amendment. A staff report to the Assembly Committee

---

[7]The only procedural prerequisite imposed upon a party before he may seek a trial de novo in the superior court is that the request be made within 30 days following the arbitration award. (§ 1141.20 and Cal. Rules of Court, rule 1616.)

[8]Appellant asserts that he relied on this interpretation of the arbitration statute in making his decision not to support his claims at the arbitration proceeding. Even if he did not rely on *Hebert,* appellant could not have anticipated that a refusal to present evidence would jeopardize his right to a judicial determination of the merits of his case. The lack of substantive guidelines constituted a significant impairment of appellant's right to notice of the standards by which his conduct was to be judged.

on the Judiciary indicates that the bill was a response to the *Hebert* decision. (Staff Rep. on Assem. Bill No. 2752 (1983-1984 Reg. Sess.) to Assem. Com. on Judiciary (Mar. 19, 1984), p. 2.)

According to the report, the sponsors of the bill contended that the legislation would "'ameliorate the unfairness' that results when a party requests a trial de novo after failing to appear and participate in a judicial arbitration hearing." (*Ibid.*; see Staff Rep. on Assem. Bill No. 2752 (1983-1984 Reg. Sess.) to Sen. Com. on Judiciary, p. 3.)

Thus, the 1984 amendment to section 128.5 addressed the precise problem that is presented here. The Legislature chose not to provide for dismissal as a sanction if a party refuses to participate. Rather, it authorized a court to impose additional costs and attorney fees on the errant party or his attorney.[9]

The Legislature squarely considered the problem of nonparticipation in judicial arbitration proceedings and decided to put teeth into the "mandatory" nature of the process by authorizing the assessment of expenses, including attorney's fees, against a nonparticipating party.

██ An immediate and unconditional dismissal entered at the first suggestion of noncooperation is too drastic a remedy in light of the fact that arbitration was not intended to supplant traditional trial proceedings, but to expedite the resolution of small civil claims.

We, therefore, reverse the trial court's order dismissing appellant's action and remand for proceedings consistent with this opinion.

Mosk, J., Broussard, J., and Grodin, J., concurred.

**BIRD, C. J.,** Concurring.—In order to secure a majority for today's decision, I have omitted from my opinion any discussion of the implications

---

[9]The legislative history discussing the amendment to section 128.5 does not mention *Genovia* v. *Cassidy* (1983) 145 Cal.App.3d 452, 459-460 [193 Cal.Rptr. 454], which declined to follow *Hebert* and upheld a dismissal under similar circumstances. However, the materials before the Legislature at the time of the amendment suggest that it believed that the sanctions of section 128.5 were sufficient to address the problem of nonparticipation in mandated arbitration proceedings.

In addition, an examination of the judicial arbitration schemes of other states which inspired California's judicial arbitration statute provide further evidence that the Legislature did not intend a party's failure to participate to preclude a trial de novo. (See generally, Judicial Council of Cal., A Study of the Role of Arbitration in the Judicial Process (1972); Note, *Compulsory Judicial Arbitration in California: Reducing the Delay and Expense of Resolving Uncomplicated Civil Disputes* (1978) 29 Hastings L.J. 475; *Lee* v. *Cel-Pek Industries, Inc.* (1977) 251 Pa.Super. 568 [380 A.2d 1243], 1243-1244; *Associated Sprinkler Co., Inc.* v. *Giansante* (1981) 286 Pa.Super. 8 [428 A.2d 211, 213-214].)

of the trial court's actions on the constitutional jury trial guarantee. I write separately to express my concern regarding this issue.

Article I, section 16 of the California Constitution gives to all its citizens the inviolate right to trial by jury. This right has been long protected and cherished in our jurisprudence.

The jury system is an essential part of our courts' ability to safeguard the rule of law in the face of constant challenges to the authority of that fundamental principle. In fact, our reliance on, and confidence in, the institution of the jury is primarily a function of the key role that the jury system plays in protecting our citizens against the unchecked powers of government, and concomitantly in providing a critical counterbalance to the power and persuasiveness of lawyers and judges.

The framers of our federal and state Constitutions were "reluctan[t] to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." (*Duncan* v. *Louisiana* (1968) 391 U.S. 145, 156 [20 L.Ed.2d 491, 500, 88 S.Ct. 1444].) The guarantee of a jury trial, therefore, reflects a profound judgment about the way in which law should be enforced and justice administered. On the most general level then, the function of the jury is to safeguard the citizen against the arbitrary exercise of official power. (See *Williams* v. *Florida* (1970) 399 U.S. 78, 87 [26 L.Ed.2d 446, 453, 90 S.Ct. 1893].)

This function finds expression in, and is reinforced by, the principles governing the right to trial by jury. Jury service provides one of the few opportunities for an ordinary citizen to participate in the affairs of his or her government. Unlike the executive and legislative branches, the judicial branch's definition of "decision maker" includes *both* judges and jurors and is not limited to elected or appointed officials.

Jurors are an integral part of the judicial process. As a result, the jury system not only provides an important civic experience for the citizen, but also imbues the entire judicial process with a sense of legitimacy. The jury's verdict ensures that the outcome of the trial will be acceptable to a substantial portion of the community. It gives to all adult citizens the opportunity to be self-governing.

Indeed, in recent years the requirement of community participation has been amplified to include the demand for a more representative cross-section of the community in jury decision-making (*Duren* v. *Missouri* (1979) 439 U.S. 357 [58 L.Ed.2d 579, 99 S.Ct. 664]). As the United States Supreme Court declared in *Ballew* v. *Georgia* (1978) 435 U.S. 223, 236-237 [55

L.Ed.2d 234, 244, 98 S.Ct. 1029], "meaningful community participation cannot be attained with the exclusion of minorities or other identifiable groups from jury service." All citizens, without regard to wealth, occupation, or other indicia of status must be deemed eligible to serve as jurors. The fulfillment of this condition highlights another major contribution of the jury. A representative jury brings with it a sense of justice that embodies the customs of all the community from which it was selected.

The value of the jury in representing the community's mores is inestimable. It furnishes a degree of flexibility to the system by tempering the sometimes rigid procedural and substantive requirements of the law with the common sense of the community at large. This characteristic makes the institution of the jury a remarkable device for insuring that any general rule of law can be shaped to ensure justice in each individual case.

Dismissal of an action for failure to comply with a court order does not always violate the right to a jury trial.[1] The dismissal power is narrowly circumscribed because every litigant must be afforded *the opportunity* to present his claims before a jury of his peers. (Cf. *Dorsey* v. *Barba* (1952) 38 Cal.2d 350, 355-356 [240 P.2d 604].) The trial court denied appellant that opportunity here. Therefore, we must critically examine the purposes and policies underlying the involuntary dismissal power to determine whether the trial court's action violated appellant's right to a jury trial.

In a civil action, the plaintiff has a duty to comply with court orders and a duty to prosecute his case in a diligent manner. (See *Oberkotter* v. *Spreckels* (1923) 64 Cal.App. 470, 473 [221 P. 698].) A breach of either duty in most jurisdictions can result in the dismissal of the complaint.[2] As the party seeking relief, the duty to prosecute with diligence and in accordance with court orders rests with the plaintiff. "'[N]o affirmative duty to do more than meet the plaintiff step by step is cast on the defendant.'" (*Knight* v. *Pacific Gas & Elec. Co.* (1960) 178 Cal.App.2d 923, 929 [3 Cal.Rptr. 600], quoting *Gunner* v. *Van Ness Garage* (1957) 150 Cal.App.2d 345, 347 [310 P.2d 32]; accord, *Abner Corp., Inc.* v. *Lushing* (1963) 212 Cal.App.2d 597, 606 [28 Cal.Rptr. 207].)

---

[1]California Code of Civil Procedure section 583.420 permits the court to dismiss an action for lack of prosecution after the trial has commenced provided that one of several enumerated conditions has occurred. Federal Rules of Civil Procedure, rule 41(b) permits a trial court to dismiss an action involuntarily when the plaintiff has failed to comply with the Federal Rules of Civil Procedure or any order of the court.
   Unless otherwise specified, all statutory references are to the Code of Civil Procedure.

[2]Many jurisdictions have a statute or rule of procedure that authorizes dismissal for failure to prosecute or to comply with court order or both. (See, e.g., Alaska Rules Civ. Proc., § 41(b), (e); Ariz. Rules Civ. Proc., § 41(b); Fla. Rules Civ. Proc., § 1.420(b), (e).)

By seeking to resolve the dispute in a judicial forum, the plaintiff acknowledges the obligations that accompany his request. The plaintiff initiates the proceedings in order to vindicate his rights. In so doing, he or she accepts the responsibility of abiding by rules designed to facilitate the orderly and equitable resolution of the dispute.

The authority of a trial court to dismiss sua sponte for disobedience or lack of prosecution is founded on this conception of the judicial process. The dismissal sanction provides the courts with the power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (*Link* v. *Wabash Railroad Co.* (1962) 370 U.S. 626, 630-631 [8 L.Ed.2d 734, 738, 82 S.Ct. 1386]) and in this way serves "the needs of court[s] in . . . preserving respect for integrity of [their] internal procedures . . . ." (*Moore* v. *St. Louis Music Supply Co., Inc.* (8th Cir. 1976) 539 F.2d 1191, 1193.)

Although the practice varies from court to court at both the state and federal levels, involuntary dismissal is most frequently employed where the conduct of the plaintiff demonstrates an unwillingness to participate in the fact-gathering and disclosure process, thereby impeding the determination of the substantive rights of the parties.

In many of these cases, dismissals have been affirmed because the plaintiff exhibits a reluctance to assist in *any* disclosure of facts or issues or to proceed to the next stage of the litigation process. (See, e.g., *Darms* v. *McCulloch Oil Corp.* (8th Cir. 1983) 720 F.2d 490, 495 [dismissal affirmed where plaintiffs refused to put on any evidence although two years had elapsed since the denial of class certification]; *Von Poppenheim* v. *Portland Boxing & Wrestling Com'n* (9th Cir. 1971) 442 F.2d 1047, 1053-1054 [dismissal affirmed where plaintiff refused to comply for 11 months with the court's order that he set forth with specificity the acts he claimed formed the basis of his cause of action].)

The sanction of dismissal with prejudice is a quid pro quo for a plaintiff's intransigence. Having exercised his rights to utilize the forum, it is the plaintiff's own dilatory or disobedient conduct in prosecuting a lawsuit that forecloses his opportunity to have his rights determined upon the merits.

The considerations underlying the employment of this involuntary dismissal power in the trial context do not justify a dismissal entered after a refusal to cooperate in a judicially mandated arbitration proceeding. In contrast to dismissals ordered pursuant to rule 41(b) of the Federal Rules of Civil Procedure and section 583.420 of the Code of Civil Procedure, the trial court in the present case did not dismiss petitioner's action as punishment

for his intransigence or lack of diligence in the trial court, but for his conduct in another forum.

An involuntary dismissal under rule 41(b) is only considered appropriate where, *after the complaint has been filed and proceedings begun* in the trial court, the plaintiff has repeatedly abused the system by engaging in persistent contumacious behavior. The operation of rule 41(b), therefore, is actually quite limited; once the litigation process has started, the plaintiff cannot be deprived of the right to pursue his claim in court unless his conduct manifests an intent to abandon his pursuit of a jury trial. To permit a dismissal with prejudice under any other circumstances would seriously burden the "substantial rights" of the litigant. (Cf. *Pond* v. *Braniff Airways, Incorporated* (5th Cir. 1972) 453 F.2d 347, 349.)

The circumstances here differ markedly from those evident in rule 41(b) dismissals. Appellant was not only denied the protections normally attendant upon an order of involuntary dismissal, but was precluded from moving the proceedings to the trial court altogether. Unlike the noncomplying parties in the typical dismissal situation, appellant's actions did not impede the litigation process. He stood ready to prove his allegations while concomitantly abiding by the rules pertaining to conduct of a jury trial. His action was dismissed with prejudice before he had a chance to present any evidence in court to support his claims.

Under these facts, the considerations invoked when a plaintiff refuses to prosecute his claims in the trial court are not present. Dismissal here would not serve the purposes of involuntary dismissals in other contexts. The policy of maintaining the integrity of internal court procedures is not applicable where, as here, the plaintiff's conduct affected a wholly different forum.

Moreover, the compulsory arbitration proceeding cannot operate as a substitute for the constitutional guarantee of a jury trial. The current scheme does not embody any of the features of the jury system deemed essential to the political viability of our legal system. Thus, the analogy implicitly accepted by the trial court here between a judicially mandated arbitration proceeding and a court proceeding does not support the drastic foreclosure of rights that an unconditional dismissal represents.

The judicial arbitration statute was enacted as an alternative to the traditional method of dispute resolution with the hope that it might help offset a seemingly ever increasing judicial workload. In responding to the demand for improving the efficient resolution of small civil claims, the Legislature made clear that the procedures employed should be simple, economical,

and expedient. (See § 1141.10, subds. (b)(1) and (2).) The arbitration scheme, however, was not intended entirely to supplant traditional trial proceedings.

As with other court-annexed arbitration systems,[3] the scheme in this state provides for a hearing that is considerably less formal than a trial in a court of law. The arbitrator's powers are expressly limited to nine listed functions. The most important are: (1) to permit testimony to be offered by deposition; (2) to permit evidence to be offered and introduced as provided in the rules; (3) to rule on the admissibility and relevancy of evidence offered; (4) to decide the law and facts of the case and to make an award accordingly; and (5) to award costs, not to exceed the statutory cost of the suit. (Cal. Rules of Court, rule 1614(a).)

All disputes regarding procedural, evidentiary, or discovery matters beyond the scope of these powers must be brought to the attention of the supervising court. (*Ibid.*) In addition, the rules of evidence governing civil actions apply only partially to judicial arbitration. The Evidence Code is relaxed in several areas permitting the introduction of certain forms of written testimony and documentary evidence not admissible in court. (Cal. Rules of Court, rule 1613.)

Under the present scheme, *any* person may serve as an arbitrator if selected by the parties. (§ 1141.18.) Legal training is not a prerequisite because arbitrators need not conform their decisions to judicial precedent. Furthermore, the arbitrator is not required to make findings of fact or conclusions of law (Cal. Rules of Court, rule 1615(a)), and no official record of the proceeding need be kept. (Cal. Rules of Court, rule 1614(b).)

These characteristics of the compulsory arbitration scheme provide more than adequate proof that the system was *not* intended to be a substitute for a judicial determination on the merits in small civil cases. Arbitrators have limited powers and are free to disregard legal precedent. Procedural safeguards required in court proceedings are relaxed considerably in arbitration proceedings.

More significantly, the Legislature unconditionally provided for a trial de novo on demand following arbitration. The Legislature recognized the constitutional problems that could arise if the arbitration hearing were to be construed as a substitute for a judicially supervised trial.

---

[3] See Snow & Abramson, *Alternative to Litigation: Court-Annexed Arbitration* (1983) 20 Cal. Western L.Rev. 43 for a comparison and analysis of the current California and Pennsylvania arbitration schemes.

The right to trial by an impartial jury is one of the oldest guarantees in the Constitution. It plays a fundamental role in maintaining our intricate system of governmental checks and balances by safeguarding our citizens against arbitrary or excessive governmental action, reinforcing personal commitment to society through concrete participation in an important governmental function, and permitting the infusion of the commonsense judgment of laymen into an often rigid judicial process. Dedication to these concepts demands that the jury system remain a vital part of the American judicial system.

In searching for instant solutions to increasingly complex social and economic problems, various modifications of the legal process have been suggested. The court-annexed arbitration scheme is one of the results of efforts in recent years to streamline court procedures, relieve congestion of court calendars, and reduce expenditures. (See § 1141.10.)

Although complexity, congestion, delay, and expense are legitimate concerns, these factors have never justified the sacrifice of fundamental rights. Efforts to expedite and efficiently administer the legal process are commendable. However, our interest in economy and speed must be tempered by the recognition that certain fundamental institutions are so essential to our system of justice that we cannot change them drastically without dramatically altering the foundation of the rule of law and the basic shape of our governmental structure.

Despite its duty to "zealously" preserve the right to jury trial (*Byram* v. *Superior Court* (1977) 74 Cal.App.3d 648, 654 [141 Cal.Rptr. 604]), the trial court sacrificed this fundamental right in favor of its concerns with administrative efficiency. These concerns cannot support the drastic remedy of eliminating the long-standing practice of providing jury trials in all legal actions. (See *People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 299 [231 P.2d 832].) This right is "so fundamental and sacred to the citizen . . . [that it] should be jealously guarded by the courts." (*Jacob* v. *New York* (1942) 315 U.S. 752, 753 [86 L.Ed. 1166, 1168, 62 S.Ct. 854].)

Penalizing a litigant by dismissing his action for failure to present evidence at a compulsory arbitration proceeding places too high a premium on achieving the goals of expediency and efficiency. An involuntary dismissal may clear the dockets of troublesome cases, but it demonstrates a strikingly indifferent attitude toward the fundamental constitutional right to a trial by jury.

The state's interest in providing a forum for the quick resolution of relatively small civil claims cannot overcome appellant's right to a jury trial.

"[T]rifling economies . . . have not generally been thought sufficient reason for abandoning our great constitutional safeguards aimed at protecting freedom and other basic human rights of incalculable value." (*Green* v. *United States* (1958) 356 U.S. 165, 216 [2 L.Ed.2d 672, 706, 78 S.Ct. 632] (dis. opn. of Black, J.).)

I would therefore hold that the use of involuntary dismissals as a sanction to ensure full participation in judicially mandated arbitration proceedings creates an unconstitutional burden on a litigant's right to a jury trial.

**REYNOSO, J.,** Concurring.—I agree with the majority that dismissal here was too drastic a penalty for appellant's refusal to present evidence at the arbitration proceedings, which took place (1) after *Hebert* v. *Harn* (1982) 133 Cal.App.3d 465 [184 Cal.Rptr. 83], had furnished a reasonable basis for assuming that such tactics would not impair appellant's right to a trial de novo and (2) before a contrary possibility had been indicated by the filing of *Genovia* v. *Cassidy* (1983) 145 Cal.App.3d 452 [193 Cal.Rptr. 454]. Accordingly, I concur in reversing the judgment of dismissal.

On the other hand, since it is clear that the judicial arbitration program was intended by the Legislature to be mandatory, the trial courts should actively support it by taking appropriate measures to encourage or require good-faith participation by litigants. As the majority points out, Code of Civil Procedure section 128.5, empowering trial courts to require payment of reasonable expenses incurred as a result of bad-faith actions or tactics, is made expressly applicable to judicial arbitration proceedings.[1] (§ 128.5, subd. (a).) Section 128.5 provides a means of avoiding the danger that a party will refuse to participate in the judicial arbitration process as a strategic tactic, attempting to assure that the trial court judgment will be more favorable to it than the "default" arbitration award, thus permitting the party to avoid the award-of-costs penalty provided by section 1141.21. If a trial court concludes that a nonparticipating party has pursued such a tactic, it may appropriately award the costs that would have been recoverable under section 1141.21 as an element of the monetary sanctions authorized by section 128.5.

Moreover, subdivision (d) was added to section 128.5 in 1985 to provide that "[t]he liability imposed by this section is in addition to any other liability imposed by law for acts or omissions within the purview of this section." In light of that subdivision, I agree with Justice Grodin that "in particular situations, additional statutorily authorized sanctions may be properly invoked," such as dismissal under section 2034. (*Post,* p. 928 [conc.

---

[1] All section references are to the Code of Civil Procedure.

opn. of Grodin, J.].) However, I do not believe that the staff report relied on by Justice Grodin (*post*) and the majority opinion as legislative history (*ante,* pp. 918-919) is a sufficient basis for precluding court exercise of inherent powers. I would leave open the question whether, in a particularly egregious case, a trial court would have inherent power to dismiss the action.

Lucas, J., and Panelli, J., concurred.

**GRODIN, J.,** Concurring.—Unlike the Chief Justice (see conc. opn. of Bird, C. J., *ante*), I believe that the Legislature may constitutionally authorize a trial court to dismiss an action if a plaintiff intentionally refuses to participate in a legislatively established, mandatory judicial arbitration process. Indeed, as a policy matter, it may well be that dismissal is the most appropriate sanction for such conduct.

I have joined the lead opinion, however, because as I read the relevant statutes, the Legislature has to date declined to authorize the denial of a trial de novo and the dismissal of the plaintiff's action as a sanction for such conduct. The provisions of the Judicial Arbitration Act explicitly embrace an alternative sanction, under which a party who requests a trial de novo is required to pay specified costs if the judgment after the trial de novo is not more favorable to such party than the arbitration award. (Code Civ. Proc., § 1141.21.)[1] In addition a separate statute—section 128.5— authorizes a trial court to order a party to a judicial arbitration proceeding to pay "any reasonable expenses, including attorney's fees" which the opposing party incurs "as a result of bad-faith actions" or frivolous or delaying tactics in such a proceeding. (§ 128.5.) No statute explicitly authorizes dismissal as a permissible sanction for a party's nonparticipation in the judicial arbitration proceeding.

As the lead opinion explains (see *ante,* pp. 918-919), the absence of a statutory provision authorizing dismissal takes on added significance in light of the pertinent judicial and legislative history in this area. After the Court of Appeal ruled in *Hebert* v. *Harn* (1982) 133 Cal.App.3d 465 [184 Cal.Rptr. 83] that the governing judicial arbitration statutes did not authorize the denial of a requested trial de novo as a sanction for a party's failure to participate in a judicial arbitration proceeding, the Legislature took up the question raised by a party's refusal to participate in such proceedings. If the Legislature had intended to authorize dismissal for such nonparticipation, it seems evident that it would have simply amended the judicial arbitration provisions at that time to so provide. Instead, the Legislature opted to amend

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

the provisions of section 128.5 to make clear that the monetary sanctions authorized by that section for frivolous or delaying actions were applicable to judicial arbitration proceedings. (See Stats. 1984, ch. 355, § 1.)

I agree with Justice Reynoso (see, *ante,* p. 926) that if a trial court finds that a litigant has refused to participate in the judicial arbitration proceeding as a means of avoiding the award-of-costs penalty provided by section 1141.21, the court may award the costs that would have been recoverable under section 1141.21 as an element of the monetary sanctions authorized by section 128.5. I also agree that, in particular situations, additional statutorily authorized sanctions may be properly invoked, depending on the nature of the litigant's misconduct in the judicial arbitration proceeding. (See, e.g., § 2034 [sanctions for refusal to comply with discovery orders].) The Legislature's response to *Hebert* indicates, however, that—at least to date—it has chosen not to authorize dismissal as a sanction for nonparticipation. If experience demonstrates that a dismissal sanction is necessary to make the judicial arbitration process effective, the Legislature, in my view, is free to adopt such a remedy.