[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 621 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 622 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 623 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 624 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 625 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 626 
OPINION
Appellant Denis Keith Rotroff appeals from an order of commitment for an indeterminate term that followed appellant's waiver of a jury trial and submission upon documentary reports and the trial court's finding, beyond a reasonable doubt, that appellant was a sexually violent predator (SVP) within the meaning of Welfare and Institutions Code section 6604.[1] On appeal, appellant challenges the constitutionality of the Sexually Violent Predator Act (SVPA) as amended by the passage of Proposition 83 in 2006.[2]
We affirm.
A. Single Subject Rule
Appellant maintains that Proposition 83[3] violated the single subject rule because it "combined too many disparate topics without a common purpose *Page 627 
under a broad and amorphous theme of dealing with sex offenders." The single subject rule is expressed in two constitutional provisions, one applicable to statutes and the other applicable to initiative measures. California Constitution, article II, section 8, subdivision (d), which applies to initiatives, provides: "An initiative measure embracing more than one subject may not be submitted to the electors or have any effect."[4]
The single subject rule is "a constitutional safeguard adopted to protect against multifaceted measures of undue scope" and "forbids joining disparate provisions which appear germane only to topics of excessive generality such as `government' or `public welfare.'" (Brosnahan v. Brown (1982)32 Cal.3d 236, 253 [186 Cal.Rptr. 30, 651 P.2d 274].) "The single subject rule as applied to the initiative has the dual purpose of avoiding logrolling and voter confusion. (Amador ValleyJoint Union High Sch. Dist. v. State Bd. of Equalization
(1978) 22 Cal.3d 208, 231 [149 Cal.Rptr. 239, 583 P.2d 1281].)" (Harbor v. Deukmejian (1987) 43 Cal.3d 1078, 1098
[240 Cal.Rptr. 569, 742 P.2d 1290].) It is intended to avoid passage of a measure that combines "provisions which might not have commanded majority support if considered separately" and to "minimize the risk of voter confusion and deception. [Citation.]" (Amador Valley Joint Union High Sch. Dist. v.State Bd. of Equalization, supra, 22 Cal.3d at p. 231.)
The California Supreme Court has "construed our two single subject provisions in an accommodating and lenient manner so as not to unduly restrict the Legislature's or the people's right to package provisions in a single bill or initiative. [Citations.]" (Californians for an Open Primary v.McPherson (2006) 38 Cal.4th 735, 764 [43 Cal.Rptr.3d 315,134 P.3d 299].) It has "found the single subject rules to have been satisfied so long as challenged provisions meet the test of being reasonably germane to a common theme, purpose, or subject. [Citations.]" (Ibid., fn. omitted.)
In Brosnahan v. Brown, supra, 32 Cal.3d 236, 248, it was argued that Proposition 8, commonly known as "The Victims' Bill of Rights," violated the single subject rule because it contained "disparate provisions covering a variety of `unrelated' matters such as school safety, restitution, bail, diminished capacity, and the like." The California Supreme Court concluded that the proposition met "the `reasonably germane' standard" because "[e]ach of its several facets bears a common concern, `general object' or `general subject,' promoting the rights of actual or potential crime victims." (Id. at p. 247.) The court stated: "As explained in the initiative's preamble, the 10 sections were designed to strengthen procedural and substantive safeguards *Page 628 
for victims in our criminal justice system. These changes were aimed at achieving more severe punishment for, and more effective deterrence of, criminal acts, protecting the public from the premature release into society of criminal offenders, providing safety from crime to a particularly vulnerable group of victims, namely school pupils and staff, and assuring restitution for the victims of criminal acts." (Ibid.) The "readily discernible common thread" uniting the initiative's provisions was the goal of protecting and enhancing the rights of crime victims. (Ibid.)
In Manduley v. Superior Court (2002) 27 Cal.4th 537
[117 Cal.Rptr.2d 168, 41 P.3d 3], the Supreme Court upheld Proposition 21 against various claims that it violated the single subject rule. (27 Cal.4th at pp. 573-581.) Its provisions related to the "Three Strikes" law, criminal gang activity, and the juvenile justice system. (27 Cal.4th at pp. 574-575.) The court determined that "[t]he general object of the initiative is to address the problem of violent crime committed by juveniles and gangs. . . ." (Id. at pp. 575-576.) It decided: "[T]he provisions of Proposition 21 that change laws regarding gang-related crime and the juvenile justice system are reasonably germane to each other and to the initiative's common purpose of addressing violent crime committed by juveniles and gangs." (Id. at p. 576.) It further determined that "[r]evising the list of violent and serious felonies to add crimes for which juveniles and gang members can receive increased penalties is reasonably germane to the initiative's general purpose of addressing juvenile and gang-related crime," "[e]ven if some of the crimes added to the list of violent and serious felonies are more likely
to be committed by an adult who is not a gang member," because "the offenses nonetheless constitute crimes that commonly are committed by members of street gangs and/or juvenile offenders . . ." (id. at p. 578).
In this case, the separate provisions of Proposition 83 are "reasonably germane to a common theme, purpose, or subject" of protecting the public against the commission of sex offenses. Appellant has not identified any provision that falls outside this common purpose. The fact that the measure affected both Welfare and Institutions Code and Penal Code sections is not determinative. (See Manduley v. Superior Court, supra,27 Cal.4th at pp. 574-575.) While appellant complains that the proposition reflects a "scattered shotgun approach to diverse topics," he concedes that these topics "relate broadly to sex offenses." (4) The single subject rule does not require that each of the provisions of an initiative measure effectively interlock in a functional relationship. (Id. at p. 575.)
In addition, we must reject appellant's assertion that the public probably misunderstood that "SVP proceedings were civil in nature" since we assume the voters duly considered and comprehended the voter materials. *Page 629 
(Manduley v. Superior Court, supra,27 Cal.4th at p. 580.) The proposition's official summary prepared by the Attorney General, which is contained in the Official Voter Information Guide, explicitly stated up front, underneath the official title: "Changes current two-year involuntary civilcommitment for a sexually violent predator to an indeterminate commitment, subject to annual review by the Director of Mental Health and subsequent ability of sexually violent predator to petition court for sexually violent predator's conditional release or unconditional discharge." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) official title and summary of Prop. 83, p. 42, italics added.) One of the proposition's express findings supporting the changes in the SVPA stated in part: "California is the only state, of the number of states that have enacted laws allowing involuntarycivil commitments for persons identified as sexually violent predators, which does not provide for indeterminate commitments." (Voter Information Guide, Gen. Elec.,supra, text of Prop. 83, § 2, subd. (k), p. 127, italics added.)
Proposition 83 does not violate the single subject requirement of article II, section 8, subdivision (d), of the California Constitution.
B. Due Process
Appellant maintains that the revised SVPA, by providing for an indeterminate term of commitment for persons determined to be SVP's, "creates an unacceptable risk that an SVP detainee who no longer qualifies as a sexually violent predator will have his commitment continued in violation of his right to due process." He insists that due process requires "periodic and mandatory hearings in which the government bears the burden of proof."
There is no dispute that persons committed under the SVPA are entitled to the protection of due process. "[F]or the ordinary citizen, commitment to a mental hospital produces `a massive curtailment of liberty,' [citation], and in consequence `requires due process protection.' [Citations.]" (Vitek v.Jones (1980) 445 U.S. 480, 491-192 [63 L.Ed.2d 552,100 S.Ct. 1254].) "It is clear that `commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.' Addington v. Texas,441 U.S. 418, 425 [60 L.Ed.2d 323, 99 S.Ct. 1804, 1809] (1979)." (Jones v. U.S. (1983) 463 U.S. 354, 361
[77 L.Ed.2d 694, 103 S.Ct. 3043].)
The existence of a recognized liberty interest requiring due process protection, however, does not tell us what procedures are required because "due process is flexible and calls for such procedural protections as the particular situation demands." (Morrissey v. Brewer (1972) 408 U.S. 471,481 [33 L.Ed.2d 484, 92 S.Ct. 2593].) The United States Supreme Court has generally eschewed "rigid rules and instead ha[s] embraced a framework to *Page 630 
evaluate the sufficiency of particular procedures." (Wilkinson v. Austin (2005) 545 U.S. 209, 224
[162 L.Ed.2d 174, 125 S.Ct. 2384].) "To determine what procedural protections the Constitution requires in a particular case, we weigh several factors: [¶] `First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' Mathews v.Eldridge, 424 U.S. 319, 335 [47 L.Ed.2d 18, 96 S.Ct. 893,903] (1976)." (Zinermon v. Burch (1990) 494 U.S. 113,127 [108 L.Ed.2d 100, 110 S.Ct. 975].)
The significance of the private interest of an individual subjected to the SVPA cannot be overstated since it is "the most elemental of liberty interests" (Hamdi v.Rumsfeld (2004) 542 U.S. 507, 529 [159 L.Ed.2d 578,124 S.Ct. 2633]), the fundamental right of a citizen "to be free from involuntary confinement by his own government without due process of law" (id. at p. 531). "To the extent Proposition 83 has increased the burden upon liberty interests by requiring only one predicate offense and imposing an indeterminate term of commitment, it has increased the weight of the first factor," the private interest affected by official action. (People v. Allen (2008) 44 Cal.4th 843, 863, fn. 15 [80 Cal.Rptr.3d 183, 187 P.3d 1018].)
As this court previously observed in People v. Litmon
(2008) 162 Cal.App.4th 383, 401 [76 Cal.Rptr.3d 122], "the state has no interest in the involuntary civil confinement of persons who have no mental disorder or who are not dangerous to themselves or others. (Addington v. Texas, supra,441 U.S. at p. 426; cf. Foucha v. Louisiana [(1992)]504 U.S. [71,] 80-82 [118 L.Ed.2d 437, 112 S.Ct. 1780] [state had no legitimate interest in continued detention of `insanity acquittee' who was no longer mentally ill]; O'Connor v.Donaldson [(1975)] 422 U.S. [563,] 576 [45 L.Ed.2d 396,95 S.Ct. 2486] [`State cannot constitutionally confine without more a nondangerous [mentally ill] individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends.'].)" In "O'Connor v. Donaldson, 422 U.S. 563 [45 L.Ed.2d 396,95 S.Ct. 2486] . . ., [the United States Supreme Court] held as a matter of due process that it was unconstitutional for a State to continue to confine a harmless, mentally ill person. Even if the initial commitment was permissible, `it could not constitutionally continue after that basis no longer existed.'Id., at 575." (Foucha v. Louisiana, supra,504 U.S. at p. 77.)
"The Due Process Clause `requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the *Page 631 
individual is committed.' Jackson v. Indiana,406 U.S. 715, 738 [32 L.Ed.2d 435, 92 S.Ct. 1845, 1858] (1972)." (Jones v. U.S., supra, 463 U.S. at p. 368.) (9) Since "it is impossible to predict how long it will take for any given individual to recover — or indeed whether he ever will recover . . ." (ibid.), California has now provided for an indeterminate commitment term for persons determined to be SVP's and annual reevaluations by the DMH (State Department of Mental Health) and other procedural safeguards. (See §§ 6604, 6605, 6608.) The critical issue, which we closely examine, is "the risk of an erroneous deprivation" of a committed person's liberty interest "through the procedures used." (Mathews v. Eldridge (1976)424 U.S. 319, 335 [47 L.Ed.2d 18, 96 S.Ct. 893].)
The SVPA mandates: "A person found to be a sexually violent predator and committed to the custody of the State Department of Mental Health shall have a current examination of his or her mental condition made at least once every year. The annual report shall include consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community. The Department of Mental Health shall file this periodic report with the court that committed the person under this article." (§ 6605, subd. (a).) A copy of the annual report must be served on the committed person. (Ibid.) Any qualified expert or professional person retained by the committed person to examine the person, or appointed by the court if the person is indigent, is entitled to "access to all records concerning the person." (Ibid.)
If the DMH "determines that either: (1) the person's condition has so changed that the person no longer meets the definition of a sexually violent predator, or (2) conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community," the director must authorize the person committed as an SVP to "petition the court for conditional release to a less restrictive alternative or for an unconditional discharge." (§ 6605, subd. (b).) The director's authorization is not discretionary where the specified DMH determinations have been made and, contrary to appellant's assertion, the government cannot avoid making any further showing "simply by not filing a petition under section 6605."
Upon receiving such a petition, the trial court must "order a show cause hearing at which the court can consider the petition and any accompanying documentation provided by the medical director, the prosecuting attorney or the committed person." (§ 6605, subd. (b).) "If the court at the show cause hearing determines that probable cause exists to believe that the committed *Page 632 
person's diagnosed mental disorder has so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged," then the court must "set a hearing on the issue." (§ 6605, subd. (c).)
Although the term "probable cause" as used in section 6605 is not defined, "`the rule of law is well established that where the Legislature uses terms already judicially construed, the "presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts".' (City of Long Beach v. Marshall (1938)11 Cal.2d 609, 620 [82 P.2d 362].)" (Cooley v. SuperiorCourt (2002) 29 Cal.4th 228, 251 [127 Cal.Rptr.2d 177,57 P.3d 654].) (12) "Probable cause" as used in section 6602 "entails a decision whether a reasonable person could entertain a strong suspicion that the offender is an SVP" (29 Cal.4th at p. 252, italics omitted; see id. at p. 236 ["the section 6602 hearing requires the superior court to determine whether a reasonable person could entertain a strongsuspicion that the petitioner has satisfied all the elements required for a civil commitment as an SVP . . ."].) We can safely assume that the Legislature, by subsequently using the same "probable cause" term in section 6605, intended the superior court to determine at the show cause hearing whether a reasonable person could entertain a strong suspicion that the committed person is no longer an SVP. (See § 6605, subd. (c).)
Further, it is reasonable to expect that section 6605's "probable cause" standard will ordinarily be satisfied if the annual report produced by the DMH finds that the committed person does not currently meet the definition of an SVP since the agency presumably has the expertise and access to current information necessary to make such a finding.[5] The DMH is charged with providing an SVP committed to its custody with appropriate treatment for his or her diagnosed mental disorder (§§ 6604, 6606, subd. (a)) and the DMH must use professionals for its annual evaluation (§ 6605, subd. (a) ["The [annual] report shall be in the form of a declaration and shall be prepared by a professionally qualified person."]).
Once the trial court determines there is probable cause, the committed person has the right to demand a jury trial and to have his own experts evaluate him. (§ 6605, subd. (d).) A committed person who is indigent is entitled to an appointed expert upon request. (Ibid.) "At the hearing, the committed person shall have the right to be present and shall be entitled to the benefit of all constitutional protections that were afforded to him or her at *Page 633 
the initial commitment proceeding." (Ibid.) Importantly, as with the initial commitment trial, the state has the burden of proof. It must prove "beyond a reasonable doubt that the committed person's diagnosed mental disorder remains such that he or she is a danger to the health and safety of others and is likely to engage in sexually violent criminal behavior if discharged." (Ibid.) If the burden of proof is not met, the committed person must be "unconditionally released and unconditionally discharged." (§ 6605, subd. (e).) Thus, appellant's claim that a person committed as an SVP has "no right to a hearing at which the government must prove the need for continued detention" is not completely correct.
In addition to the rights of petition and hearing established by section 6605, the DMH must "seek judicial review of the person's commitment pursuant to the procedures set forth in Section 7250 [writ of habeas corpus] in the superior court from which the commitment was made" if it has reason to believe that a person committed to it as an SVP is no longer an SVP.[6]
(§ 6605, subd. (f).) "If the superior court determines that the person is no longer a sexually violent predator, [the person must] be unconditionally released and unconditionally discharged." (Ibid.) Thus, whether or not the committed person files an authorized section 6605 petition, it appears that DMH must generally seek habeas corpus relief for the committed person following an annual report concluding that the person no longer meets the definition of an SVP. Moreover, habeas corpus proceedings can be, if necessary, speedily resolved. (See People v. Standish (2006)38 Cal.4th 858, 887 [43 Cal.Rptr.3d 785, 135 P.3d 32]; People v.Romero (1994) 8 Cal.4th 728, 744 [35 Cal.Rptr.2d 270,883 P.2d 388].)
Other statutory provisions help ensure that the nature and duration of commitment are reasonably related to the purpose of the commitment. The Director of Mental Health is required to file a report and recommendation for conditional release whenever the director determines that a committed person's "diagnosed mental disorder has so changed that the person is not likely to commit acts of predatory sexual violence while under supervision and treatment in the community." (§ 6607, subd. (a).) This triggers a judicial conditional release hearing "in accordance with the procedures set forth in Section 6608." (§ 6607, subd. (b).)
Under section 6608, committed persons continue to have the right to bring a petition for unconditional discharge or conditional release without authorization: "Nothing in this article shall prohibit the person who has been *Page 634 
committed as a sexually violent predator from petitioning the court for conditional release or an unconditional discharge without the recommendation or concurrence of the Director of Mental Health." (§ 6608, subd. (a).) A person petitioning for conditional release or unconditional discharge under section 6608 is entitled to assistance of counsel. (Ibid.)
Section 6608 does, however, erect a number of procedural hurdles. "If a person has previously filed a petition for conditional release without the concurrence of the director and the court determined, either upon review of the petition or following a hearing, that the petition was frivolous or that the committed person's condition had not so changed that he or she would not be a danger to others in that it is not likely that he or she will engage in sexually violent criminal behavior if placed under supervision and treatment in the community, then the court shall deny the subsequent petition unless it contains facts upon which a court could find that the condition of the committed person had so changed that a hearing was warranted." (§ 6608, subd. (a).) Section 6608 directs the court to "endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds" and, if frivolous, to "deny the petition without a hearing." (Ibid.) Also, in a hearing under section 6608, the petitioner has "the burden of proof by a preponderance of the evidence." (§ 6608, subd. (i).) Further, a section 6608 petitioner is not entitled to a hearing until the person "has been under commitment for confinement and care in a facility designated by the Director of Mental Health for not less than one year from the date of the order of commitment." (§ 6608, subd. (c).) "If the court denies the petition to place the person in an appropriate forensic conditional release program or if the petition for unconditional discharge is denied, the person may not file a new application until one year has elapsed from the date of the denial." (§ 6608, subd. (h).)
The burdens and requirements imposed upon a petitioner by section 6608 are an "apparent attempt to deter multiple unsubstantiated requests and to reduce the administrative burden that might otherwise occur. . . ." (Hubbart v.Superior Court (1999) 19 Cal.4th 1138, 1148, fn. 14 [81 Cal.Rptr.2d 492, 969 P.2d 584].) Even assuming arguendo that a due process concern might exist if section 6608 were the only avenue for obtaining release, multiple statutory provisions ensure that the duration of SVP commitment bears a reasonable relation to the committed person's continuing qualification as an SVP.
Even with the provision of an indeterminate term, the SVPA as a whole continues to ensure that the duration of actual commitment under an order of commitment for an indeterminate term is consistent with constitutional due process limits. *Page 635 
C. Equal Protection
Appellant asserts that he has been denied equal protection under the Fourteenth Amendment of the United States Constitution. He compares the indeterminate term of commitment under the SVPA to the one-year commitment term provided by the Mentally Disordered Offender (MDO) Act (Pen. Code, § 2960
et seq.). He also points to the statutory right of insanity acquittees to be heard on application for release under Penal Code section 1026.2 after 180 days of confinement, an option not available to persons committed under the SVPA. He maintains that these differences are not justified by any compelling state interest as required under a strict scrutiny standard of review and, therefore, the SVPA violates his constitutional right of equal protection.
"`"The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment."' (In re Gary W. (1971) 5 Cal.3d 296, 303
[96 Cal.Rptr. 1, 486 P.2d 1201].) `The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but `whether they are similarly situated for purposes of the law challenged.' [Citation.]" (Cooley v. Superior Court,supra, 29 Cal.4th at p. 253, italics omitted; seeLawrence v. Texas (2003) 539 U.S. 558, 579
[156 L.Ed.2d 508, 123 S.Ct. 2472] ["The Equal Protection Clause of the Fourteenth Amendment `is essentially a direction that all persons similarly situated should be treated alike.'"].)
As appellant indicates, the MDO act provides for a maximum one-year commitment, which may be extended for additional one-year terms. (Pen. Code, §§ 2970, 2972, subd. (c); seePeople v. Allen (2007) 42 Cal.4th 91, 103
[64 Cal.Rptr.3d 124, 164 P.3d 557].) The People have the burden of proof beyond a reasonable doubt on a petition for continued treatment. (Pen. Code, § 2972, subd. (a); see Pen. Code, § 2970.) While both SVP's and MDO's have been convicted of crimes related to mental disorders that render them dangerous, these groups are not similarly situated with regard to the specified length of the commitment term. The MDO law targets prisoners who have a "treatable, severe mental disorder," which "was one of the causes of, or was an aggravating factor in the commission of the crime for which they were incarcerated" but which can be kept in remission with mental health treatment. (Pen. Code, § 2960; see Pen. Code, § 2962.) The one-year MDO commitment term is consistent with the treatable nature of the mental disorders suffered by MDO's. As previously indicated, "[a]menability to treatment is not required for a finding" that a person is an SVP (§ 6606, *Page 636 
subd. (b).) As we have also noted, Proposition 83's express findings indicate "sex offenders are the least likely to be cured. . . ." (Voter Information Guide, Gen. Elec.,supra, text of Prop. 83, § 2, subd. (b), p. 127; cf. Hubbart v. Superior Court, supra, 19 Cal.4th 1138,1165 ["legislative findings accompanying the [Kansas Sexually Violent Predator Act at issue in Kansas v. Hendricks
(1997) 521 U.S. 346 [138 L.Ed.2d 501, 117 S.Ct. 2072]] suggested that sexually violent predators were `"unamenable to existing mental illness treatment modalities,"` and would likely require care and commitment on a `"long term"' basis"].) Because SVP's are not necessarily amenable to effective treatment and as a group of offenders have poorer prospects for being cured, SVP's are not similarly situated to MDO's with respect to imposition of an indeterminate term. Nevertheless, as discussed with regard to due process, the actual duration of an indeterminate term under the SVPA depends upon whether any particular committed person continues to meet the definition of an SVP Thus, the actual commitment time for both groups of committed persons is linked to their continued qualification for commitment.
As to committed insanity acquittees, appellant focuses on their right to apply for release under Penal Code section 1026.2[7]
(Pen. Code, § 1026.2, subd. (a)) and to be heard on that application in as little as 180 days after the date of the order of commitment (Pen. Code, § 1026.2, subd. (d)). He asserts that SVP's have no similar "right to compel a hearing on the merits regarding their committed status. . . ." A committed insanity acquittee's application for release on the ground that sanity has been restored triggers a two-step hearing process (see Pen. Code, § 1026.2, subds. (e), (h);People v. Soiu (2003) 106 Cal.App.4th 1191, 1196
[131 Cal.Rptr.2d 421]) but "[n]o hearing upon the application" is "allowed until the person committed has been confined or placed on outpatient status for a period of not less than 180 days from the date of the order of commitment." (Pen. Code, § 1026.2, subd. (d).)
At the first hearing, the outpatient placement hearing, the insanity acquittee has the burden of proving "the applicant will not be a danger to the health and safety of others, due to mental defect, disease, or disorder, while under supervision and treatment in the community. . . ." (Pen. Code, § 1026.2, subd. (e).) If the court determines that burden of proof has been satisfied, then it must "order the applicant placed with an appropriate forensic conditional release program for one year." (Ibid.) The second step is a trial on restoration of sanity. (Pen. Code, § 1026.2, subds. (e), (f), (h); see People v. Soiu, supra, *Page 637 106 Cal.App.4th at p. 1196.) In both steps, the applicant has "the burden of proof by a preponderance of the evidence." (Pen. Code, § 1026.2, subd. (k).)
In People v. Soiu, supra, 106 Cal.App.4th 1191,1197-1198, an appellate court determined that a trial court cannot deny a release application brought under Penal Code section 1026.2 without holding an outpatient placement hearing. Under Penal Code section 1026.2, if a trial court "denies the application to place the person in an appropriate forensic conditional release program or if restoration of sanity is denied, no new application may be filed by the person until one year has elapsed from the date of the denial." (Pen. Code, § 1026.2, subd. (j).)
Section 6608 also involves a two-step hearing process. If the court at the first hearing "determines that the committed person would not be a danger to others due to his or her diagnosed mental disorder while under supervision and treatment in the community," the court must "order the committed person placed with an appropriate forensic conditional release program operated by the state for one year." (§ 6608, subd. (d).) An unconditional release hearing must be held at the end of that year. (Ibid.) In both steps, the SVP petitioner has "the burden of proof by a preponderance of the evidence." (§ 6608, subd. (i).) Thus, like insanity acquittees, SVP's may annually seek release through a hearing process in which they have the burden of proof by a preponderance of the evidence. (See § 6608, subds. (c) [must have been committed for at least one year before hearing on § 6608 petition], (h) ["If the court denies the petition to place the person in an appropriate forensic conditional release program or if the petition for unconditional discharge is denied, the person may not file a new application until one year has elapsed from the date of the denial."], (i) [petitioner has burden of proof by a preponderance of the evidence].)
Although, unlike insanity acquittees, a person committed as an SVP cannot be heard on a section 6608 petition until at least one year from the date of the order of commitment (§ 6608, subd. (c)), this difference does not establish an equal protection violation. SVP's and insanity acquittees are not similarly situated with respect to the possibility of seeking release during the initial year of commitment. The involuntary commitment of an insanity acquittee is based upon a jury finding following trial that a defendant "was insane at the time the offense was committed." (Pen. Code, § 1026, subd. (a).) Thus, the insanity finding, upon which the initial commitment is based, concerns some point in time prior to the filing of an accusatory pleading and the subsequent criminal trial. In contrast, a commitment under SVPA is based upon a jury finding, beyond a reasonable doubt, that a person has acurrent mental disorder "that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent *Page 638 
criminal behavior." (§ 6600, subd. (a)(1), (3); see § 6604; People v. Superior Court (Ghilotti) (2002)27 Cal.4th 888, 902 [119 Cal.Rptr.2d 1, 44 P.3d 949].) Given these differences, section 6608's provision requiring at least one year of commitment before a section 6608 hearing does not contravene the equal protection guarantee.
In addition, we conclude that section 6608's express authorization of summary denial does not constitute an equal protection violation. That section allows a trial court to deny any frivolous petition or any petition, subsequent to a frivolous or unsuccessful section 6608 petition, that fails to allege "facts upon which a court could find that the condition of the committed person had so changed that a hearing [is] warranted." (§ 6608, subd. (a).) In the absence of any facts possibly showing a meaningful change in the condition of a person found to be an SVP beyond a reasonable doubt, a petition for release would be devoid of merit. The definition of "frivolous" has been understood as meaning "indisputably" or "totally and completely" without merit. (See People v.Collins (2003) 110 Cal.App.4th 340, 349-352
[1 Cal.Rptr.3d 641] [reversal of order denying § 6608 petition for conditional release without a hearing because petition was not completely without merit], 350 ["if the defendant's position has some merit on the issue of whether he or she may qualify for conditional release, the statute requires that the court provide the defendant a hearing on the matter"]; see also In reMarriage of Flaherty (1982) 31 Cal.3d 637, 650
[183 Cal.Rptr. 508, 646 P.2d 179] [appeal is frivolous "when it is prosecuted for an improper motive — to harass the respondent or delay the effect of an adverse judgment — or when it indisputably has no merit — when any reasonable attorney would agree that the appeal is totally and completely without merit"].)
Although Penal Code section 1026.2 contains no provision authorizing summary denial of applications for release, courts have inherent power to summarily deny any action that is predicated upon sham or wholly frivolous grounds. (SeeLyons v. Wickhorst (1986) 42 Cal.3d 911, 915
[231 Cal.Rptr. 738, 727 P.2d 1019] [recognizing trial court may invoke limited, inherent discretionary power to dismiss where pleading a sham]; Ferguson v. Keays (1971)4 Cal.3d 649, 658 [94 Cal.Rptr. 398, 484 P.2d 70] [appellate courts possess inherent power to summarily dismiss any action or appeal "based upon wholly sham or frivolous grounds"].)People v. Soiu, supra, 106 Cal.App.4th 1191, which is relied upon by appellant in arguing that trial courts have no discretion to summarily deny an insanity acquittee's application for release without a hearing, did not concern a sham or a patently frivolous application for release. Moreover, we do not believe that indisputably baseless claims enjoy constitutional protection. Both insanity acquittees and SVP's are entitled to be heard on their applications or petitions for release that have arguable merit. (See People v. Collins,supra, 110 Cal.App.4th 340; cf. In re Marriageof Flaherty, supra, 31 Cal.3d 637, 650 *Page 639 
["Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal" and "[a]n appeal that is simply without merit is not by definition frivolous . . ."].)
We discern no equal protection violation as argued by appellant.
D. Ex Post Facto and Double Jeopardy Prohibitions
Appellant contends that his indeterminate commitment under the SVPA is punitive and, therefore, violates the federal constitutional prohibitions against ex post facto laws and double jeopardy. The double jeopardy clause of "[t]heFifth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment (Benton v.Maryland (1969) 395 U.S. 784, 793-796 [23 L.Ed.2d 707,89 S.Ct. 2056, 2061-2064]), protects defendants from repeated prosecution for the same offense [citations], by providing that no person shall `be subject for the same offense to be twice put in jeopardy of life or limb. . . .'" (People v.Batts (2003) 30 Cal.4th 660, 678 [134 Cal.Rptr.2d 67,68 P.3d 357].) It "protects only against the imposition of multiple criminal punishments for the same offense,Helvering v. Mitchell, 303 U.S. 391, 399
[82 L.Ed. 917, 58 S.Ct. 630, 633] (1938); see also [U. S. ex rel.Marcus v. Hess (1943) 317 U.S. 537,] 548-549 [87 L.Ed. 443, 63 S.Ct. 379, 386-387] (`Only' `criminal punishment' `subject[s] the defendant to "jeopardy" within the constitutional meaning'); Breed v. Jones,421 U.S. 519, 528 [44 L.Ed.2d 346, 95 S.Ct. 1779, 1785] (1975) (`In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution'). . . ." (Hudson v. United States (1997) 522 U.S. 93, 99
[139 L.Ed.2d 450, 118 S.Ct. 488].) (23) "The Ex Post Facto Clause, which ` "forbids the application of any new punitive measure to a crime already consummated,"' has been interpreted to pertain exclusively to penal statutes. [Citation.]" (Kansas v.Hendricks, supra, 521 U.S. 346, 370, italics omitted.) (24) A judicial determination that a law is not punitive "removes an essential prerequisite" for both double jeopardy and ex post facto claims. (Id. at p. 369.)
Appellant maintains that the revised SVPA was intended to impose criminal punishment and also is punitive in effect. He points to Proposition 83's "Intent Clause." That provision states that the intent of the people of California in enacting the measure was to "strengthen and improve the laws that punish and control sexual offenders" and requires any conflicting provision of law "that provides for a greater penalty or longer period of imprisonment" to supersede the provisions contained in Proposition 83. (Voter Information Guide, Gen. Elec.,supra, text of Prop. 83, § 31, p. 138.) He maintains that "[t]he intent to punish is also evident from the scope of the reforms," which include increased criminal penalties, imposition of lengthier *Page 640 
parole periods, a more inclusive definition of "sexually violent predator," and more restrictions upon registered sex offenders. Appellant insists that an indeterminate term of commitment under the SVPA is similar to a life prison term with the possibility of parole and is punitive in effect because "mental illness is not necessarily a permanent condition" and the SVPA now permits a person committed as an SVP to be "retained in custody long past the duration of his mental illness without the government ever having to justify the need for the ongoing commitment." We are not persuaded.
In determining whether a law imposes criminal punishment, we first determine whether the intent was to impose criminal punishment and, if there was no such intent, we next consider the effect of the law. (See Smith v. Doe (2003)538 U.S. 84, 92 [155 L.Ed.2d 164, 123 S.Ct. 1140] [retroactive application of sex offender registration statute was not ex post facto violation]; Hudson v. United States, supra,522 U.S. at p. 99 [civil sanctions imposed for violation of federal banking law not criminal punishment and did not bar subsequent criminal prosecution].) Generally, the government "may take measures to restrict the freedom of the dangerously mentally ill." (Kansas v. Hendricks, supra,521 U.S. 346, 363.) "This is a legitimate nonpunitive governmental objective and has been historically so regarded. [Citation.]" (Ibid.) "[C]onfinement of `mentally unstable individuals who present a danger to the public' [is] one classic example of nonpunitive detention. [Citation.]" (Ibid.)
In enacting the SVPA in 1995, the Legislature expressly stated its intent that persons determined to be SVP's "be confined and treated until such time that it can be determined that they no longer present a threat to society" and "be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes." (Stats. 1995, ch. 763, § 1, pp. 5921-5922.) Section 6250 continues to provide that persons subject to judicial commitment as SVP's "be treated, not as criminals, but as sick persons."
Prior to the SVPA's 2006 amendment, the California Supreme Court had upheld it against ex post facto claims. (SeeHubbart v. Superior Court, supra,19 Cal.4th at pp. 1170-1179.) It concluded that "the SVPA does not impose liability or punishment for criminal conduct. . . ." (Id. at p. 1175.) The court has determined that "SVPA proceedings are civil in nature [citations]. . . ." (Cooley v. Superior Court, supra,29 Cal.4th at p. 250; see People v. Allen, supra, 44 Cal.4th at p. 860
["Proceedings to commit an individual as a sexually violent predator in order to protect the public are civil in nature."].) This court has also previously rejected as meritless both ex post facto and double jeopardy claims against the SVPA. (See, e.g., People v. Carlin (2007)150 Cal.App.4th 322, 348 [58 Cal.Rptr.3d 495]; People v.Hubbart (2001) 88 Cal.App.4th 1202, 1226
[106 Cal.Rptr.2d 490].) *Page 641 
As the California Supreme Court recently noted: "Proposition 83 amended the Penal Code as well as the Welfare and Institutions Code. The intent to punish sexually violent predators through Penal Code provisions that apply to criminal prosecutions does not establish an intent to punish sexually violent predators through Welfare and Institutions Code provisions that apply to civil commitment proceedings. Although Proposition 83 made amendments to both the criminal and the civil schemes, it recognized the different purposes of these two schemes, stating in the preamble: `Existing laws that punish aggravated sexual assault, habitual sexual offenders, and child molesters must be strengthened and improved. In addition, existing laws that provide for the commitment andcontrol of sexually violent predators must be strengthened and improved.' (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, § 2, subd. (h), p. 127, italics added.)" (People v. Allen, supra,44 Cal.4th at pp. 861-862.)
Proposition 83's express findings and declarations specific to the SVPA state a desire to avoid "unnecessary or frivolous jury trial actions where there is no competent evidence to suggest a change in the committed person." (Voter Information Guide, Gen. Elec., supra, text of Prop. 83, § 2, subd. (k), p. 127.) The express statements that "California is the only state" among states providing for involuntary commitment of SVP's that "does not provide for indeterminate commitments" and that "California automatically allows for a jury trial every two years irrespective of whether there is any evidence to suggest or prove that the committed person is no longer a sexually violent predator" (ibid.) reflect an intent to eliminate a needless burden on the state, rather than an intent to punish committed persons.
Further, we do not agree that the indeterminate term of commitment renders the SVPA punitive in effect. In Kansasv. Hendricks, supra, 521 U.S. 346, "Hendricks focuse[d] on his confinement's potentially indefinite duration as evidence of the State's punitive intent." (Id. at p. 363.) The United States Supreme Court in Hendricks concluded that, "[f]ar from any punitive objective, the confinement's duration is instead linked to the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others. Cf.Jones, 463 U.S., at 368 (noting with approval that `because it is impossible to predict how long it will take for any given individual to recover [from insanity] or indeed whether he will ever recover — Congress has chosen . . . to leave the length of commitment indeterminate, subject to periodic review of the patient's suitability for release')." (Id. at pp. 363-364.) The court found it significant that a committed person was "statutorily entitled to immediate release" whenever he was adjudged safe to be at large. (Id. at p. 364.)
While the limited duration of any single commitment term was a consideration in the prior determinations by the United States Supreme Court and the *Page 642 
California Supreme Court that the potentially indefinite commitment of an SVP did not constitute criminal punishment (see Kansas v. Hendricks, supra, 521 U.S. at p. 364
[one-year term under Kansas's Sexually Violent Predator Act];Hubbart v. Superior Court, supra,19 Cal.4th at p. 1177 [two-year term under California's SVPA]), neither court suggested that an indeterminate term of civil commitment would necessarily constitute criminal punishment. The California Supreme Court noted in Hubbart, "nothing inHendricks purports to limit for ex post facto purposes the precise length of time during which dangerously disordered persons may be confined. . . ." (Hubbart v. SuperiorCourt, supra, 19 Cal.4th at p. 1176.)
As our due process discussion indicates, the actual length of an indeterminate term of commitment under the current SVPA depends upon whether the committed person continues to qualify as an SVP. The present law contains procedural safeguards directly linking the duration of any commitment to the existence of an ongoing qualifying mental disorder resulting in dangerousness. (See §§ 6600, subd. (a)(1), 6604, 6605, 6607, 6608.) Viewed as a whole, the SVPA continues to be "designed to ensure that the committed person does not `remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness.' (Hendricks,supra, 521 U.S. 346, 364 [117 S.Ct. 2072, 2083].)" (Hubbart v. Superior Court, supra,19 Cal.4th at p. 1177.) Appellant has demonstrated neither a punitive intent nor a punitive effect. (Cf. Kansas v. Hendricks, supra,521 U.S. at pp. 368-369.)
E. First Amendment Right of Petition
Appellant claims that the SVPA violates the federalfirst amendment right to petition the court for redress of grievances by limiting access to the court and not providing "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." He points to the statutory requirement that a committed person's section 6605 petition for conditional release or unconditional discharge be authorized by the Director of Mental Health (§ 6605, subd. (b)) and maintains that this limitation is "analogous to the regulation in Ex Parte Hull" requiring administrative screening and approval of documents before transmittal to a reviewing court, which was held unconstitutional. Appellant further argues that "[t]he combined effect of section[s] 6605 and 6608 will be to deny SVP detainees the opportunity to [be heard] on the merits in court" since section 6605 requires preauthorization and section 6608, although it has no authorization prerequisite, places the burden of proof on the committed person but does not provide for appointment of a medical expert who would provide the necessary proof and permits summary denial of frivolous petitions filed under that section. *Page 643 
"[T]he right of access to the courts is an aspect of theFirst Amendment right to petition the Government for redress of grievances." (Bill Johnson's Restaurants, Inc. v. NLRB
(1983) 461 U.S. 731, 741 [76 L.Ed.2d 277, 103 S.Ct. 2161]; seeCalifornia Transport v. Trucking Unlimited (1972)404 U.S. 508, 510 [30 L.Ed.2d 642, 92 S.Ct. 609].) The right of access to the courts is also "founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." (Wolff v.McDonnell (1974) 418 U.S. 539, 579 [41 L.Ed.2d 935,94 S.Ct. 2963] [state's duty to provide legal assistance to prison inmates extends to civil rights cases as well as to habeas corpus proceedings and, adequacy of legal assistance had to be assessed where prison regulation prohibited fellow inmates, other than the offender appointed by the warden, from providing legal assistance].) "[P]ersons in prison, like other individuals, have the right to petition the Government for redress of grievances which, of course, includes `access of prisoners to the courts for the purpose of presenting their complaints.' [Citations.]" (Cruz v. Beto (1972)405 U.S. 319, 321 [31 L.Ed.2d 263, 92 S.Ct. 1079] (percuriam) [cause of action under 42 U.S.C. § 1983]; seeJohnson v. Avery (1969) 393 U.S. 483, 485
[21 L.Ed.2d 718, 89 S.Ct. 747] ["Since the basic purpose of the writ [of habeas corpus] is to enable those unlawfully incarcerated to obtain their freedom, it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed."], 490 [invalidating regulation prohibiting inmates from assisting or advising other prisoners with preparation of habeas corpus petitions "unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief"].) Persons committed as SVP's also enjoy the constitutional right of petition, which encompasses the right of court access.
Sections 6605 and 6608, whether considered individually or together, do not, however, impair the constitutional right of committed persons to petition the government for redress of grievances. Section 6605's preauthorization requirement is not equivalent to the administrative regulation held unconstitutional in Ex parte Hull. The petitioner inEx parte Hull (1941) 312 U.S. 546 [85 L.Ed. 1034,61 S.Ct. 640] was a state prisoner. A prison official had refused to notarize Hull's petition for writ of habeas corpus and accept it for mailing and prison guards had confiscated the petition after Hull had delivered the papers to his father for mailing outside the prison. (Id. at pp. 547-548.) Hull was eventually able to pass a document to the Supreme Court through his father. (Id. at p. 548.) In response to the Supreme Court's order to show cause why leave to file a petition for writ of habeas corpus should not be granted, the state prison warden invoked a regulation that provided: "`All legal documents, briefs, petitions, motions, habeas corpus proceedings and appeals will first have to be submitted to the institutional *Page 644 
welfare office and if favorably acted upon be then referred to Perry A. Maynard, legal investigator to the Parole Board, Lansing, Michigan. Documents submitted to Perry A. Maynard, if in his opinion are properly drawn, will be directed to the court designated or will be referred back to the inmate.'" (Id. at pp. 548-549.)
The Supreme Court in Hull held that the prison regulation was invalid because "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus." (Ex parte Hull,supra, 312 U.S. at p. 549.) The court stated: "Whether a petition for writ of habeas corpus addressed to a federal court is properly drawn and what allegations it must contain are questions for that court alone to determine. [Citations.]" (Ibid.) In the present case, no administrative regulation limits a committed person's right to apply for habeas corpus relief in federal or state court. (See § 7250 [any person who has been committed to a state hospital for the mentally disordered is entitled to a writ of habeas corpus upon proper application].)
Section 6605 creates a conditional statutory right for committed persons to petition the court for conditional release or an unconditional discharge based upon the outcome of their mandatory annual mental health examination. A petition under section 6605 must be authorized by the Director of Mental Health following a determination by the DMH that "either: (1) the person's condition has so changed that the person no longer meets the definition of a sexually violent predator, or (2) conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community. . . ." (§ 6605, subd. (b).) Section 6605 is not an administrative rule or regulation and it does not interfere with access to habeas corpus relief.
Section 6608 similarly creates a conditional statutory right for persons committed as an SVP to petition the court for conditional release or an unconditional discharge, but without the recommendation or concurrence of the Director of Mental Health. It likewise does not impede petitions for writ of habeas corpus.
Prisoner cases involving the right of petition and court access have focused on case preparation and filing of legal documents. The Supreme Court held in Bounds v. Smith (1977)430 U.S. 817, 828 [52 L.Ed.2d 72, 97 S.Ct. 1491] that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." (Lewis v. Casey
(1996) 518 U.S. 343, 354 [135 L.Ed.2d 606, 116 S.Ct. 2174].) "The right that Bounds *Page 645 
acknowledged was the (already well-established) right ofaccess to the courts. E.g., Bounds, 430 U.S., at 817,821, 828 [97 S.Ct. at pp. 1492-1493, 1494, 1498]. In the cases to which Bounds traced its roots, [the Supreme Court] had protected that right by prohibiting state prison officials from actively interfering with inmates' attempts to prepare legal documents, e.g., Johnson v. Avery, 393 U.S. 483,484, 489-490 [21 L.Ed.2d 718, 89 S.Ct. 747, 748, 750-751] (1969), or file them, e.g., Ex parte Hull,312 U.S. 546, 547-549 [85 L.Ed. 1034, 61 S.Ct. 640, 640-642] (1941)" (Id. at p. 350.) "It has not been held that there is any general obligation of the courts, state or federal, to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief. [Citation.]" (Johnson v. Avery, supra, 393 U.S. at p. 488; seeLewis v. Casey, supra, 518 U.S. at p. 354 [federal Constitution does not require the "permanent provision of counsel" to the prisoner population]; see also Pennsylvaniav. Finley (1987) 481 U.S. 551, 555 [95 L.Ed.2d 539,107 S.Ct. 1990] [declining to hold "that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions"].)
In Lewis v. Casey, the Supreme Court disclaimed statements in Bounds that "appealed] to suggest that the State must enable the prisoner to discover
grievances, and to litigate effectively once in court." (Lewis v. Casey, supra, 518 U.S. at p. 354.) Appellant has failed to cite any authority indicating that the constitutional right of an involuntarily committed person to petition the government includes a right to present a wholly frivolous claim (id. at p. 353, fn. 3 ["Depriving someone of a frivolous claim . . . deprives him of nothing at all. . . ."]) or a right to receive the assistance or an appointment of a medical expert in order to petition effectively.[8] In addition, appellant has made no showing of actual injury. (Lewis v. Casey, supra,518 U.S. at pp. 349 ["requirement that an inmate alleging a violation ofBounds must show actual injury derives ultimately from the doctrine of standing . . ."], 351 [to establish a denial of meaningful access to the courts, an inmate must show actual injury, such as by demonstrating that "alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim"].)
As Justice Powell observed in his concurring opinion inBounds, the majority opinion "recognize[d] that a prison inmate has a constitutional right of access to the courts to assert such procedural and substantive rights as may be available to him under state and federal law" but it "does not purport to pass on the kinds of claims that the Constitution requires state or federal courts to hear." (Bounds v. Smith, supra, 430 U.S. at p. 833; seeChristopher v. *Page 646 Harbury (2002) 536 U.S. 403, 415 [153 L.Ed.2d 413,122 S.Ct. 2179] [The constitutional right of access to courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"].) The constitutional right to petition does not dictate what statutory rights must be provided to involuntarily committed persons wishing to obtain judicial review of their commitments.
The order of commitment filed October 22, 2008, is affirmed.
Rushing P. J., and Premo, J., concurred.
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] A number of issues with respect to the constitutionality of the SVPA are presently pending before the Supreme Court. (See People v. McKee, review granted July 9, 2008, S162823 [lead case includes due process, equal protection, and ex post facto issues]; People v. Johnson, review granted Aug. 13, 2008, S164388; People v. Riffey, review granted Aug. 20, 2008, S164711; People v.Boyle, review granted Oct. 1, 2008, S166167; People v.Garcia, review granted Oct. 16, 2008, S166682; Peoplev. Force, review granted Apr. 15, 2009, S170831.)
[3] We take judicial notice of the Voter Information Guide prepared by the Secretary of State for the November 7, 2006 General Election insofar as it concerns Proposition 83. (Evid. Code, §§ 452, 459.)
[4] With respect to statutes, article IV, section 9 of the California Constitution provides in pertinent part: "A statute shall embrace but one subject, which shall be expressed in its title. If a statute embraces a subject not expressed in its title, only the part not expressed is void."
[5] Any future judicial interpretation of the amended SVPA will presumably be informed by the rule of statutory construction requiring courts to avoid interpretations raising constitutional doubts. (See People v. Superior Court(Romero) (1996) 13 Cal.4th 497, 509 [53 Cal.Rptr.2d 789,917 P.2d 628].)
[6] Section 7250 provides in part: "Any person who has been committed is entitled to a writ of habeas corpus, upon a proper application made by the State Department of Mental Health or the State Department of Developmental Services, by that person, or by a relative or friend in his or her behalf to the judge of the superior court of the county in which the hospital is located. . . ."
[7] Penal Code section 1026.1 provides: "A person committed to a state hospital or other treatment facility under the provisions of Section 1026 shall be released from the state hospital or other treatment facility only under one or more of the following circumstances: [¶] (a) Pursuant to the provisions of Section 1026.2. [¶] (b) Upon expiration of the maximum term of commitment as provided in subdivision (a) of Section 1026.5, except as such term may be extended under the provisions of subdivision (b) of Section 1026.5. [¶] (c) As otherwise expressly provided in Title 15 (commencing with Section 1600) of Part 2."
[8] Nevertheless, a committed person has a statutory right to an expert in connection with a hearing on a section 6605 petition: "The committed person also shall have the right . . . to have experts evaluate him or her on his or her behalf. The court shall appoint an expert if the person is indigent and requests an appointment." (§ 6605, subd. (d).) *Page 647